The Troy Turnpike and Rail Road Company *vs.* M'Chesney.

The clause in an act of incorporation of a turnpike or rail road company authorizing *a forfeiture of stock and previous payments* in cases of non-payment of calls, confers a *cumulative remedy ;* and does not deprive the company of the right to *proceed by action* for the recovery of subscriptions.

Nor is the company *limited* to the remedy by forfeiture, although the promise be *expressed* in the subscription to be *upon pain of forfeiting, &c.*, and consequently the plaintiffs may declare upon such contract as upon an *absolute promise.*

A notice requiring payments to be made to A. B., residing in the city of Troy, is *prima facie* a sufficient compliance with the requirement of the statute that the *place* of payment shall be designated in the notice.

An *agent* of an incorporated company may receive authority to act for his *principals*, otherwise than by a formal resolution ; it may be collected from circumstances.

THIS was an action of *assumpsit*, tried at the Rensselaer circuit, in October, 1835, before the Hon. JAMES VANDERPOEL, then one of the circuit judges.

The plaintiffs were incorporated in April, 1831, with power to make and construct *a turnpike road* from the city of *Troy* to *Bennington* or *Pownal*, in the state of Vermont ; and also to make and construct a single or double *rail road* from Troy to either of the said towns. The *capital stock* to be $100,000, to be divided into shares of $100 each, with power to the company to increase the stock to $1,000,000. Commissioners were appointed by the act to receive subscriptions, and when the sum of $50,000 was subscribed, notice was directed to be given for the election of directors, who were authorized to require payments of the sums subscribed, at such times and in such proportions as they should see fit, under the penalty of the forfeiture of all previous payments made thereon ; notice of the payments required, and of the time and place of payment, to be given in a public newspaper published in the city of Troy. The defendant subscribed for *five shares* of the stock, amounting to $500, and this suit was brought against him for calls amounting to

$320, which he had neglected to pay. The plaintiffs produced *one of the books of subscription*, by which it appeared that the defendant was a subscriber for five shares of the stock of the company. The engagement was to the effect that the subscribers severally promised to pay to the company $100 on each share of stock set opposite their respective names : one dollar to be paid immediately, and $99 in such sums and at such times and places as the company should require, *upon pain of forfeiting to the company all previous payments made thereon.* The plaintiffs proved calls for payments, amounting in the whole to $64 upon each share, and the publication of notices of such calls requiring payments to be made *to certain persons* named in the notices, *residing in the city of Troy,* in the city of New York, and in other places, or to one of them. Upon this evidence the plaintiffs rested, and the defendant's counsel moved for a *nonsuit,* on the grounds : 1. That by the terms of the subscription, the only remedy that the plaintiffs had was a *forfeiture* of previous payments ; and 2. That the *places of payment* as designated in the notices were not sufficiently *definite ;* which motion was overruled by the judge.

From the defence set up it appeared, that about 15th June, 1831, directors were appointed, and that up to January, 1833, it was contemplated to construct a *rail road* instead of a *turnpike road ;* then, however, the idea of constructing a rail road was abandoned, and the directors resolved to construct a *Macadamized turnpike road,* and appointed committees to negotiate with the subscribers to the stock, and to allow them to withdraw *one-half* of their subscriptions upon their assuming to pay the residue as calls should be made. *After this,* to wit, in the early part of *March,* 1833, the defendant became a subscriber for the stock held by him. He complained that a number of the subscribers had been allowed to withdraw their subscriptions, contrary to his expectations ; and also that the agent of the company who had solicited his subscription had promised to release him therefrom, if at any time he desired it, and he alleged that he had made such request. In reference to these allegations proof was adduced on both sides.

The judge charged the jury, that unless they were satisfied that the defendant was fully informed of all the circumstances of the transaction in reference to the road; and that no fraudulent representations were made to induce him to subscribe, they ought to find a verdict in his favor ; otherwise, he instructed them, they should find for the plaintiffs the amount claimed. The jury found for the plaintiffs. In the progress of the trial it appeared that the *agent* of the company received *verbal instructions* from the directors to permit such subscribers as desired to do so, *wholly* to withdraw their subscriptions, and that such instructions were given without any *formal resolution* adopted by the directors and entered upon their minutes : this evidence was objected to by the defendant, and overruled by the judge. The defendant moved for a new trial.

*H. Z. Hayner*, for the defendant, insisted that a new trial ought to be granted : 1. Because the notice of the *place* where the payments were to be made was insufficient. The notice required the payment to be made *to A. B. of the city of Troy ;* it should have been that the payment should be made *at Troy* to A. B. According to the notice the defendant could be relieved only by a *personal tender* to A. B. 2. There was a *variance* between the contract declared upon and that produced on the trial. As declared upon it was an absolute promise to pay, subjecting the promissor *to an action at law*, whereas by the contract produced the only remedy of the plaintiffs was a *forfeiture of previous payments.* 3. The undertaking of the defendant was *not* a note under the statute, and the plaintiffs were not entitled to recover for the omission to set forth any *consideration* for the promise. 4. A *verbal authority* to the agent to discharge such subscribers as chose to be discharged, was an illegal act; the directors could only act by a *formal resolution* entered upon their minutes.

*H. T. Eddy*, for the plaintiffs.

*By the Court*, NELSON, Ch. J. All the cases in this court from 1 Caines, 381, to 14 Johns. R. 238, show that the con-

dition of forfeiture of stock and all previous sums paid, for non-payment of any subsequent instalment, is but a cumulative remedy given to the company. See 19 Wendell, 43. The general act passed in 1807, 1 R. L. 228, 1 R. S. 580, relative to turnpike companies, as well as the act respecting incorporations for manufacturing purposes, passed in 1811, 1 R. L. 245, 3 R. S. 221, contain clauses nearly *verbatim* with the one in this charter, and under which several of the decisions were made.

It is true, the forfeiture clause is here carried into the subscription papers; if it had not been so embodied, the rights and liabilites of the subscriber would have depended upon, and must have been construed in reference to the act of incorporation of the company ; and the effect of it would have been as available to him as if incorporated into his contract. I cannot think, therefore, that this circumstance varies the question. The most that can be said regarding the uniform construction of the clause is, that the instrument giving the remedy at common law contains also the one under the statute.

This view answers the objection of *variance* between the contract as set out and as proved. The plaintiffs had a right to count as upon an *absolute promise*.

The act of incorporation of this company, Statutes, sess. of 1831, p. 232, § 15, provides that notice shall be given, among other things, " of the place and time" when and where payments are to be made. The notices published designated the individuals by name, and the city or village in which they resided, to whom the payments were to be made. It is urged that the *place* is too indefinite. The notice was thirty days, and with ordinary diligence there could have been no great difficulty in finding the individual. At all events, I think if the failure of payment happened on this account, it lay upon the defendant to give some evidence of it.

It is also urged that the verbal authority given to the agent by the directors to negotiate with the subscribers, and relinquish even the *whole* of their stock if insisted upon, after the company had determined to build a Macadamized *turnpike road* instead of a *rail road,* was nugatory ; not be-

ing a corporate act of the body. Such is undoubtedly the general rule, though the *appointment* of the agent, and the *extent of his authority*, may as in the case of an appointment by a natural person, be established by circumstances. 14 Johns. R. 118. 4 Cowen, 645. But the question is not at all important here; because, 1. The defendant was advised of the direction thus given in respect to the previous subscribers before he subscribed ; and 2. Even if his position be correct, as to the agent in this case, the only consequence would be, that the subscribers are still liable, which cannot operate to his prejudice. If it be said the directors subsequently ratified the *act* erasing their names, the answer is, that they have done no more than the defendant was advised they intended to do.

Upon the whole, under the charge of the judge at the trial, and the verdict of the jury, I do not perceive that the defendant can complain either in law or equity.

New trial denied.