Curia, per

Evans, J.
The question which has been argued in this Court is, whether the plaintiffs, under their charter, can maintain this action, and to this alone has the attention of the Court been directed. There is no difference of opinion on the proposition that a corporation, being a mere legal entity — a factitious creation of the law — we must look to its charter for the evidence of its existence and extent of its rights. The general rule is, that it has no powers, except those granted. The charter of this company, like other charters, gives expressly the power to sue and be sued; and, as the corporation is a distinct being from its members, I see no reason why it may not sue one of its members as well as other persons. But, if there were any doubt on this subject, it is removed by the Act of 1792.
The 19th section of the charter imposes on every subscriber or stockholder the obligation to pay to the company the amount of the shares subscribed for; “and, on failure to pay up any *92 instalment called for, the shares on which such default may be made, together with any payment .thereon, shall be forfeited to the company, to be appropriated as they shall see fit.” The question, therefore, is, whether, as the charter has given one mode of coercing payment, all others are excluded. On one side it is contended that forfeiture is the only remedy, and, on the other, that this is merely cumulative, at the option of the company.
There is abundance of authority that the fact of subscribing creates the obligation and implied promise to pay, and is a sufficient consideration to support the promise: (2 Bibb. 576; 3Alab. B.ep. 660; 5 Alab. 787.) If, therefore, the clause of forfeiture had been omitted, I suppose there would be no doubt about the right of the company to recover. Does the insertion of another mode exclude the right which would otherwise have existed ? From the numerous authorities which have been quoted, it is very likely there have been contradictory decisions on the subject. In the case of the Andover Corporation vs. Gould, (6 Mass. R. 40,) Parsons, C. J., is reported to have said that it was a general rule, founded on sound reason, that where a statute gives a new power, and, at the same time, provides the means of executing it, those who claim the power can execute it in no other way. All the subsequent cases, (7 Mass. 102, 8 Mass. 138, 10 do. 384,14 do. 287. and 10 Pick. 378) — all carry out the same principles. So far as I can ascertain from the reports, there is a general Act defining the mode in which particular corporations may be formed. The shares have no particular value, but each subscriber agrees to take a certain proportion of the stock, and the penalty prescribed for default in paying assessments is by sale of the shares. In New Bedford and Bridgwater Turnpike Corporation vs. J. Q. Adams, it is said, if one expressly promise to pay, he is bound; but, by subscription, he simply engages to become a proprietor of a certain number of shares, without promising to pay assessments The idea which runs through the cases seems to be this — that, by the contract, his express promise is only to become the proprietor .of so many *93 shares; and the implied promise to pay assessments cannot arise where the charter has pointed out a particular mode of enforcing payment. But all the cases agree that, if there be an express promise to pay, an action of assumpsit will lie. I cannot but believe that this opinion is founded in something in their organic law, for most of the cases refer to an Act of the Legislature, which regulates the mode in which such companies are to be formed. But, be this as it may, the decisions in all or most of the other States, proceed on different principles, and hold a contrary doctrine. I proceed to state some of them. Inston vs. The Frankfort Bridge Co. (2 Bibb. 516.) In this case, the defendant had subscribed for twenty shares, at one hundred dollars each. The following principles were decided: 1. In an action by the corporation against a subscriber for the amount subscribed, no other consideration is necessary to be shewn than the subscription, according to the terms of the charter. 2. Whenever there is a legal liability, the law implies a promise to pay. 3. The remedy given by the statute, to sell the share of a delinquent, is cumulative. 4. The right to sue for debts due the company existed in the corporation, and was not taken away by an affirmative grant of another remedy. 5. The attempt to sell the shares did not take away the right to sue for instalments called for.
Tar River Navigation Co. vs. Neal, (3 Hawks, 520,) where an Act of -the Legislature, incorporating a company, authorizes the company to strike off the name of a delinquent subscriber and to sell his shares, this mode is merely cumulative, and does not preclude the company from suing for instalments due.
Beene vs. The Callaba & Marion Railroad Company, (3 Alaba. R. 660.) Books were opened,.similar to those opened in this case. The defendant, Beene, subscribed for twenty shares, value $2,000. Upon default of payment, he was sued. It was decided that the act of subscribing created a contract to pay for the shares subscribed, in the manner prescribed by the charter; and the corporation may sue notwithstanding another remedy may be given by the charter. authorizing the sale of the stock *94 when it could be sold at par. Other cases were quoted in the argument, to prove the remedy by sale was merely cumulative. (See 4 Rand. 576 ; 21 Wendell, 296.)
Our own case of Palmetto Lodge vs. Hubbell, (2 Strob. 458,) is to the same effect.
No English case on the point has been brought to our notice, except the case of Kirk vs. Nowill, (1 Term R. 118,) which decides that where an Act of Parliament directs one mode of proceeding to recover penalties and forfeitures, no other can be used. The same principle was recognized in this Court, many years ago, in the case of McRae vs. The Town Council of Camden. There can be no doubt of the correctness of this principle, but it has no bearing on the question under consideration. A penalty is no debt, nor can there be any promise to pay it implied, if inflicted in any other way than the one pointed out by the charter. The nineteenth section of the charter of the Greenville and Columbia Rail Road Company provides, “ that every subscriber or holder of stock shall pay to the Company the amount of the shares by him or her subscribed or held.” “ And on failure to pay up any instalments so called for,” “ the shares upon which default shall be made, together with any past payments thereon, shall be forfeited to the Company and appropriated as they shall see fit.” The first part of this clause imposes on the subscribers the obligation to pay; and all the cases quoted above from Kentucky, North Carolina, Alabama and New York, agree that the power of sale or the penalty of forfeiture does not take away the remedy by action to recover the value of the shares subscribed. The word used in this charter is, shall, and that is supposed to impose an imperative order of forfeiture. Shall, is a word of various signification, as any one will discover by looking into Richardson’s or Webster’s Dictionaries. In several parts of this charter it is used as of the same import as may, and in other place's, shall and may are used together as convertible terms ; as in the 19th section, where it is said, the said Company “ shall and may prescribe.” It does not seem to me the words can have a more imperative *95 meaning, than that payment shall he made under penalty of forfeiture. The charter of the Troy Turnpike and Kail Road Company contained the provision that payment for the stock should be made upon pain of forfeiture of the stock and all previous payments, and yet it was held, in 21 Wend. 296, that these words did not prevent the Company from recovering the sums due for stock. In the case of the Selma and Tennessee Rail Road Company vs. Tiplon, the words of the charter were, “ that for failure to pay any requisition, the stock shall be forfeited to the Company with all the instalments that may have been paid.” These words are of the same import, and almost identical with the words of the charter of the plaintiffs, and it was decided that the company could recover the price of the stock. Whether we consider the words of the charter in their import, as gathered from the charter, or their ordinary import, or the judicial construction placed on similar words, I think there is nothing in them which made it imperative on the Company to forfeit the stock of the defendants; but even if that be so, the time is discretionary, and until it is exercised, the stock remains the property of the subscribeis, and so long as they retain the stock, they are bound by the charter and their subscription to pay according to the terms of it. The object in chartering the Company was to raise money to build the road, and this would be most effectually defeated, if the stockholders could evade their promises to pay the amount of their subscription, by a mere forfeiture of the stock. I, therefore, think that the power to forfeit is merely cumulative, and the insertion of it in the charter does not take away the other legal remedies which the Company have to enforce payment from the stockholders.
The motion is dismissed.
Frost, Withers and Whitner, JJ. concurred.