*In re* SOUTH MOUNTAIN CONSOLIDATED MINING Co., Bankrupt.

(*District Court, D. California.*   January 10, 1881.)

1. MINING CORPORATION—LIABILITY OF SHAREHOLDERS.

A mining corporation, organized in accordance with the statutes of California, divided its capital stock into 100,000 shares of the nominal par value of $100 each, and issued such part of its stock to the former owners of the mining property as had been previously agreed upon, and reserved the remainder for working capital and future sale; but no subscription paper, memorandum of association, deed of settlement, or other document creating, either expressly or impliedly, any *ex contractu* obligation to take and pay for, at their nominal par value, any shares of the stock, was signed by any of the shareholders. *Held,* that such stockholders incurred no liability *ex contractu*, either express or implied, to pay in, either for the prosecution of the enterprise or the payment of the debts of the company, the nominal par value of their shares.

2. SAME—ASSESSSMENT OF STOCK—SALE OF SHARES.

    *Held, further,* that unless such stockholders had subscribed for stock, or were the successors of such subscribers, assessments levied upon them could only be enforced by the sale of their shares.

3. DELINQUENT STOCK—PERSONAL LIABILITY OF SHAREHOLDER — CODE OF CIV. PROC. OF CAL. § 349.

    Section 349 of the Code of Civil Procedure of the state of California, relating to the sale of delinquent stock, provides that " on the day specified for declaring the stock delinquent, or at any time subsequent thereto and before the sale of the delinquent stock, the board of directors may elect to waive further proceedings under this chapter for the collection of delinquent assessments, or any part or portion thereof, and *may elect to proceed by action to recover the amount of the assessment, and the costs and expenses already incurred, or any part or portion thereof.*" *Held,* that this section did not create any personal liability for assessments, unless from the terms of the stockholder's subscription such liability was incurred.

4. STOCKHOLDER—LIMITATION OF PERSONAL LIABILITY — CODE OF CIV. PROC. OF CAL. § 322.

    By section 322 of the Code of Civil Procedure of the state of California, as amended March 15, 1876, the individual liability of a stockholder of a corporation is limited to such proportion of its debts and liabilities as the amount of stock or shares owned by him bears to the whole stock of the corporation; and, on payment of his proportion of any debt due from the corporation, incurred while he was a stockholder, he is relieved from any further personal liability for such debt. *Held,* that the remedy of a creditor against a stockholder personally is limited by this section of the Code, and cannot be extended beyond the limits therein prescribed.

Application for leave of assessment on shareholders of stock of a mining corporation.

*James A. Waymire,* for creditors.

*McAllister & Bergin,* for William Willis.

HOFFMAN, D. J. At the request of counsel I indicate the grounds for the denial of the application heretofore made to order an assessment to be levied on the shareholders of the above corporation. The assessment is asked for with the object of collecting the same by suits *in personam* against delinquent shareholders. The question whether they are personally liable must, therefore, first be determined. I do not question the power of the court to compel contribution of unpaid subscriptions to the capital stock of an insolvent corporation for the purpose of paying its debts. *Upton* v. *Tribil-*

*cock*, 91 U. S. 48; *Sanger* v. *Upton*, Id. 60; *Chubb* v. *Upton*, 95 U. S. 665; *Pullman* v. *Upton*, 96 U. S. 328; *Turnbull* v. *Payson*, 95 U. S. 420; *Bank* v. *Case*, 99 U. S. 528; *Hatch* v. *Dana*, 101 U. S. 205. Nor do I deny that a promise to pay for shares of stock will be implied from the fact of subscribing for them. *Spear* v. *Crawford*, 14 Wend. 20; *H. & N. H. R. Co.* v. *Kennedy*, 12 Conn. 499; *Fry* v. *L. & B. S. R. Co.* 2 Metc. (Ky.) 314; *Klein* v. *A. & S. R. Co.* 13 Ill. 514; *Banet* v. *A. & S. R. Co.* Id. 504. And the acceptance and holding of a certificate of stock will have the same effect. *Upton* v. *Tribilcock*, 91 U. S. 48; *Sanger* v. *Upton*, Id. 60. Nor is it necessary to create a liability as stockholder that a certificate shall have been issued. *Chaffin* v. *Cummings*, 37 Me. 76; *Chase* v. *Merrimack Bank*, 19 Pick. 564; *Silver* v. *Magruder*, 32 Md. 393; *Burr* v. *Wilcox*, 22 N. Y. 551; *Chester Glass Co.* v. *Dewey*, 16 Mass. 94. Payment of assessments will estop an unregistered transferee of shares from denying his liability as a shareholder. Serving as director, or voting at stockholders' meetings, will have the same effect. *Frost* v. *Walker*, 60 Me. 468; *M. & T. R. Co.* v. *Harris*, 36 Miss. 17; *Gaff* v. *P. & S. R. Co.* 31 Pa. St. 489; *Hays* v. *P. & S. R. Co.* 38 Pa. St. 81; *Harrison* v. *Heathorn*, 6 Man. & Gr. 81. The acceptance of an assignment of a certificate in blank will fix the liability as stockholder. *Upton* v. *Burnham*, 3 Biss. 524. If a subscription be obtained by fraud, it must be promptly repudiated. *Upton* v. *Tribilcock*, 91 U. S. 45; *Chubb* v. *Upton*, 95 U. S. 667. Nor will ignorance of the law relieve the stockholder. *Upton* v. *Tribilcock*, 91 U. S. 45. Nor can the corporation release the stockholder from his liability, so far as creditors are concerned ; nor can it accept any other mode of payment than money, unless full value be given. *Sanger* v. *Upton*, 91 U. S. 60; *Troy, T. & R. Co.* v. *McChesney*, 21 Wend. 296; *Lake Ont. R. Co.* v. *Mason*, 16 N. Y. 459. The fact that the company may forfeit and sell the shares of a delinquent stockholder does not impair the rights of a creditor against him. Ang. & Ames on Corp. §§ 549–50 ; Thompson on Liab. of Stockh. § 193, and cases cited.

All these positions, which the counsel for petitioners have

maintained in their able and elaborate brief, I concede. These principles apply to all cases where an obligation has been created or incurred on the part of the stockholder to pay to the corporation a certain sum, being the par value of the capital stock subscribed for or transferred to him. The liability thus created grows out of contract, express or implied, and the creditors of the corporation may avail themselves of it, as of any other *chose in action* or equitable assets of the corporation, on well-settled and familiar principles.

But the question in this case is: Does the acceptance of stock in a mining corporation, as they are usually formed in this state, create any obligation, either by contract or under the law, to pay to the corporation or to its creditors the nominal par value of the stock so accepted? The mode in which mining companies are formed in this state is familiar to us all. The owners of the property, or persons expecting to become such, by complying with a few simple formalities, form themselves, with such others as they may take into the association, into a corporation, to which the property is conveyed. The amount of the capital stock, which is required to be stated in the certificate of incorporation, is usually fixed at a purely arbitrary sum, and divided into as many shares as convenience or caprice may dictate. It neither bears, nor is intended nor supposed by the public to bear, the slightest relation to the real value of the property—a value nearly always conjectural, and very often imaginary. It has recently become the practice to divide the capital stock into 100,000 shares of the value of $100 each, making $10,000,000 in all; a sum which, it is apparent, can have no reference to any estimate of the real or intrinsic value of what is usually a mere hole in the ground, supposed to afford favorable indications. A striking proof of this is afforded in the present case. Among the first acts of the corporation was to place (in effect) 5,000 shares of their stock on the market at the price of one dollar per share. The organization having been effected and the property conveyed to the company, the stock is issued to the former owners, to the amount which may have been pro-

viously agreed upon.  The remainder is reserved for working capital, or disposed of in the market for such prices as the value and prospects of the enterprise may justify. The purchaser is, of course, careful to know into how many shares the stock is divided, but he is wholly regardless of the nominal and purely arbitrary par value attributed to the shares.  No subscription paper, memorandum of association, deed of settlement, or other document, creating either expressly or impliedly any *ex contractu* obligation to take and pay for, at their nominal par value, any shares of stock, is signed by any of the shareholders.  This general account of the mode of organizing mining companies in this state describes, with sufficient accuracy, what was done in the case as bar.  The requirements of the statutes of this state with regard to mining corporations were strictly complied with.  I am unable to perceive how any *ex contractu* obligation on the part of the shareholders to take and pay for their stock was created. It may be confidently affirmed that in no case of this description has such an obligation or liability been *intended* to be created.  It has on all hands been supposed that the resources of such corporations were to be derived from the sale of reserved stock, or by levying assessments, with the power of selling delinquent stock.  Creditors are protected by the personal liability of each shareholder for his *pro rata* share of the indebtedness of the corporation.

It was urged on the part of the stockholders that the shares held by them are to be treated as fully paid-up stock.  I do not concur in this suggestion.  It might have some plausibility in cases where all the stock has been distributed among the owners of the mine in proportion to their respective interests; but where stock has been reserved, and subsequently sold at perhaps one-hundredth part of its nominal par value, it can in no sense be called or treated as fully paid-up stock.

But, even in the case of shares distributed among the mine owners, the view suggested seems to me inadmissible.  It is a pure fiction.  The mine owners do not, in fact, agree to take the stock and pay for it at its nominal par value—payment to be made by conveying the mining ground at a valua-

tion extravagantly in excess of its real value. If they had really contracted any obligation to take and pay for the stock, they could not acquit themselves of it by such a device. *Sanger* v. *Upton*, 91 U. S. 60; *Troy T. & R. Co.* v. *Mc-Chesney*, 21 Wend. 296; *Lake Ont. R. Co.* v. *Mason*, 16 N. Y. 459; *Wilson* v. *United Ins. Co.* 14 John. 228; *Goshen & M. Turnpk. Co.* v. *Hurtin*, 9 John. 217.

To call the stock fully paid up is to admit the obligation to take and pay for it, and to suppose that obligation to have been fulfilled in a mode the law will not permit. In my view no such obligation *ex contractu* was at any time created. If the liability to pay the nominal par value of the stock for the benefit of creditors exists, it must arise from the positive provisions of the statutes, and not from the contracts of the parties. This question I will now proceed to examine. The statutory provision by which this liability is supposed to be created is found in the 349th section of the Code of Civil Procedure. The previous sections of the article of the Code contain detailed and minute provisions regulating the levying of assessments; then to the sale of delinquent stock.

Section 349 provides that "on the day specified for declaring the stock delinquent, or at any time subsequent thereto and before the sale of the delinquent stock, the board of directors may elect to waive further proceedings under this chapter, for the collection of delinquent assessments, or any part or portion thereof, and *may elect to proceed by action to recover the amount of the assessment and the costs and expenses already incurred, or any part or portion thereof.*"

It is this last clause which is supposed to create a legal liability on the part of of the stockholders to pay assessments up to the par value of the stock, when necessary to satisfy the indebtedness of the corporation.

But to this view there are grave, and, in my judgment, insuperable objections.

1. The statute does not, in terms, declare or create the liability. It merely authorizes the directors "to elect to proceed by action to recover the amount of the assessments." Its language would be satisfied by restricting its operation to

those cases where such an action can be maintained; that is, to those cases where stock has been subscribed for, and an obligation assumed to take and pay for it. In the case of railroad, telegraph, and wagon-road associations, the articles of incorporation are required to state that at least 10 per cent. of the capital stock subscribed has been paid in, and no such corporation can be organized until subscriptions to its capital stock have been obtained in a specified amount for each mile of the contemplated work, and 10 per cent. of this amount must be paid in before the articles are filed. Sections 291, 292, 293, 294.

By section 290, the articles of incorporation must set forth —"*First*, * * *; *sixth*, the amount of the capital stock and the number of shares into which it is divided; *seventh*, if there is capital stock, the amount actually subscribed, and by whom."

These provisions are retained in the latest amendments to the Code, 1880. The only meaning I can attach to them is that the legislature contemplated two classes of corporations, in both of which the amount of the so-called capital stock, and the number of shares into which it is divided, are required to be stated; but in only one of these classes the stock was supposed to be subscribed for, and an obligation incurred to take and pay for it. This latter class includes, as we have seen, railroad, wagon-road, and telegraph companies, and banking, insurance, and other associations based on capital paid in or agreed to be paid in. It is to this class that the clause giving the directors the right to elect "to proceed by action to recover by action the amount of the assessment" must, in my judgment, be deemed to refer.

2. The argument of the learned counsel for the creditors admitted that the liability contended for was limited to an amount equal to the par value of the stock held by the stockholders, and that it could only be enforced for the benefit of creditors. But if the construction of section 349, contended for, be sound, I fail to perceive on what grounds this limitation or restriction can be imposed.

Section 331 authorizes the directors of corporations to levy and collect assessments upon the capital stock for the purpose of *paying expenses, conducting business,* or paying debts. The statute nowhere limits the aggregate of assessments that may be levied to the par value of the capital stock, and it has been held by the United States circuit court for this district that an assessment may be levied upon the full-paid shares of a subscriber to stock in a bank, and his shares sold out if the assessment is not paid.

Section 349 confers, as we have seen, the right to proceed by action to recover any delinquent assessment; and if this power be not restricted, as I have suggested, to cases wherein the stockholder has, by express or implied contract, agreed to pay, it will extend to all cases of assessments levied to meet expenses or conduct business, as well as to pay debts, and may be exercised against a stockholder who has paid his subscription in full, or who has already been assessed up to the par value of his stock. This result, startling and absurd as it is, seems to be the necessary consequence of the construction of section 349 contended for.

3. It will not be disputed that the ordinary rule which requires such a construction to be given to the provisions of a statute as will make them consistent and harmonious should be applied to the provisions of our Code with regard to corporations.

By section 322, as amended March 15, 1876, the individual liability of a stockholder of a corporation is limited to such proportion of its debts and liabilities as the amount of stock or shares owned by him bears to the whole stock of the corporation;. and, on payment of his proportion of any debt due from the corporation, incurred while he was a stockholder, he is relieved from any further personal liability for such debt.

I am unable to reconcile these provisions with a construction of section 349 which would give it the effect and operation contended for.

The court is asked to order an assessment to be levied, in order that the assignee in bankruptcy, representing the cred-

itors, may collect by suit from the delinquent stockholders an amount sufficient to pay the debts of this corporation up to the limit of the par value of the shares held by them.

The section just referred to limits his personal liability for the corporate debts incurred while he is stockholder to such proportion of those debts as the number of shares owned by him bears to the whole numbers of shares of the capital stock. But, if he is personally liable on the assessment to be levied, he may be obliged, if he is the only solvent stockholder, to pay the whole amount of the indebtedness of the corporation, provided it does not exceed the fanciful and exaggerated par value mentioned in the articles.

If, as in the case at bar, the whole number of shares is 100,000, at $100 each, the stockholder who owns 1,000 shares is liable for one one-hundredth part of the debts. If the aggregate indebtedness is $100,000, he acquits himself of all personal liability by the payment of $1,000. But if he is liable to the amount of the par value of his stock, he may be compelled to pay $100,000.

Will it be contended that a stockholder who has paid his full proportion of the debts incurred while he was a stockholder would still remain personally liable to pay any assessment that may be levied, and that such a payment, which the statute declares shall relieve him from any further personal liability for such debts, and shall be a good defence in an action brought by a creditor, shall be unavailable in an action brought by an assignee in bankruptcy in behalf of creditors to collect an assessment levied for the payment of debts?

It seems to me that such a position is wholly untenable. I conclude, therefore: *First.* That the stockholders of mining corporations, organized as the corporation in this case was formed, incurred no liability *ex contractu*, either express or implied, to pay in, either for the prosecution of the enterprise or the payment of the debts of the company, the nominal par value of their shares. *Second.* That unless they have subscribed for stock, or are the successors of subscribers,

assessments levied on them can only be enforced by the sale of their shares. *Third.* That section 349 does not create, and was not intended to create, any personal liability for assessments, unless from the terms of the stockholders' subscription such liability was incurred. *Fourth.* That the remedy of the creditor against the stockholder personally is limited and defined by section 322 of the Code, and his liability cannot be extended beyond the limits therein prescribed.