[L. A. No. 915.  Department Two.—February 25, 1902.]

# VERMONT MARBLE COMPANY, Appellant, v. DECLEZ GRANITE COMPANY et al., Defendants; A. P. HALFHILL, CHARLES N. FLINT, and J. P. CONROY, Respondents. GUS ESCALIER, Intervener, Appellant.

CORPORATIONS—STOCK—ORIGINAL PURCHASE UNDER PAR—CREDITORS' BILL—COLLECTION OF UNPAID RESIDUE.—The stockholders organizing a corporation with shares of stock having a par value of one hundred dollars each, who, by oral agreement among themselves, had paid-up shares issued to each of them, at a purchase rate of twenty dollars per share, are liable, upon the insolvency of the corporation, to the collection from them of the unpaid residue of the par value of the stock, upon a creditor's bill filed for that purpose by the judgment creditors of the corporation.

ID.—CAPITAL STOCK THE BASIS OF CREDIT—PUBLIC POLICY.—The capital stock of a corporation is its sole basis of credit; and as to creditors the corporation is presumed to have sought credit based upon its supposed capital stock at its par value, either actually paid in or due from the stockholders. Public policy requires that the fact whether a particular creditor did trust the corporation on that basis should not be inquired into.

ID.—SUBSCRIBED STOCK—TRUST FUND FOR CREDITORS—PROTECTION IN EQUITY.—The subscribed stock of a corporation is a trust fund in favor of its creditors, which a court of equity will enforce in their favor when the corporation ceases to be a going concern, and it will not allow the trust so arising to be defeated by simulated payment, or by any device short of an actual payment in good faith.

ID.—ORIGINAL STOCKHOLDERS DEEMED SUBSCRIBERS—SALE OF STOCK AN INEFFECTIVE DEVICE.—Whatever binding effect the agreement of the original stockholders may have as against the corporation, nevertheless, as to its creditors, they must be deemed subscribers to its stock, and the sale of the stock to them by the corporation, at less than its par value, was an ineffective device to escape liability to creditors for subscriptions. The fact that they owned the original stock fixed their liability in favor of the creditors of the corporation.

ID.—ORIGINAL CALL FOR PAYMENT—STATUTE OF LIMITATIONS.—An original call for payment of subscriptions upon shares made pursuant to the oral agreement of the original stockholders, under which the shares were issued, upon payment of twenty dollars per share, did not set the statute of limitations in motion as against subsequent calls for the residue of the par value made upon a creditor's bill against the original stockholders.

ID.—TRANSFER OF STOCK NOT PROVED.—The transfer of stock by an original stockholder was not sufficiently proved to escape liability for calls where there is no evidence that the transferee accepted the transfer, or authorized any one to act for him, by evidence merely that a third party asked to have the shares transferred on the books to the transferee, which was not in fact done.

ID.—JUDGMENT OF NONSUIT—REVIEW UPON APPEAL—PRESUMPTIONS.— Upon a judgment of nonsuit, the presumptions upon appeal are not strong for the correctness of the ruling; but the evidence must be construed as strongly as possible the other way, since the plaintiff is entitled to a judgment upon the merits, if there is any substantial evidence in his favor.

APPEAL from a judgment of the Superior Court of Los Angeles County. Waldo M. York, Judge.

The facts are stated in the opinion of the court.

Finlayson & Finlayson, for Vermont Marble Company, Appellant, and William T. Craig, for Intervener.

The stockholder is liable to creditors for the full par value, even though he has received for a sum less than its par value stock purporting to be fully paid stock, and under an agreement to pay less than its par, or face, value. (11 Thompson on Corporations, secs. 1562-1564, 1566, 1578, 1607; 1 Cook on Corporations, 4th ed., secs. 28, 31, 32, 42, 46; *Scovill* v. *Thayer*, 105 U. S. 143; *Upton* v. *Tribilcock*, 91 U. S. 45; *Sanger* v. *Upton*, 91 U. S. 56; *Wood* v. *Dummer*, 3 Mason, 308,—the leading case; *Thompson* v. *Reno Sav. Bank*, 19 Nev. 103;[1] *Hill* v. *Atoka etc. Co.*, 124 Mo. 153; *Coleman* v. *Howe*, 154 Ill. 458;[2] Civ. Code, sec. 359; Cal. Const., art. XII, sec. 11; *Hospes* v. *Northwestern Mfg. Co.*, 48 Minn. 174;[3] *Crofoot* v. *Thatcher*, 19 Utah, 212;[4] *McGinniss* v. *Barnes*, 23 Mo. App. 413.)

J. F. Conroy, for Respondents Conroy and Halfhill.

The stockholders of mining companies acquiring their stock as fully paid are not liable under the laws of California for any difference between the price paid for their stock and its face, or nominal, value. (*In re South Mount. Min. Co.*,

[1] 3 Am. St. Rep. 797.
[2] 45 Am. St. Rep. 133.
[3] 31 Am. St. Rep. 637, 649.
[4] 75 Am. St. Rep. 725.

7 Saw. 30; 5 Fed. 403; 8 Saw. 366; 14 Fed. 347; *Harmon* v. *Page*, 62 Cal. 459; *San Joaquin etc. Co.* v. *Beecher*, 101 Cal. 78, cited and approved in *Young* v. *Erie Iron Co.*, 65 Mich. 111). The stock was purchased under an executed agreement which binds the corporation and its subsequent creditors. (*Scadden etc. Co.* v. *Scadden*, 121 Cal. 33; *Kohler* v. *Agassiz*, 99 Cal. 15; *Kellerman* v. *Maier*, 116 Cal. 416; *In re South Mount. Min. Co.*, 7 Saw. 30-35; 5 Fed. 403; 8 Saw. 366; 14 Fed. 347; *Penn Match Co.* v. *Hapgood*, 141 Mass. 145.) Such an action as this is not maintainable, except in cases where the stockholder is liable to the corporation, and the liability enforceable by the corporation itself. (*South Carolina Mfg. Co.* v. *Bank of South Carolina*, 6 Rich. Eq. 227; *Baines* v. *Babcock*, 95 Cal. 539; *Sawyer* v. *Upton*, 91 U. S. 56; *Hatch* v. *Dana*, 101 U. S. 205.) The statutes of limitation bar a recovery by plaintiff in this action. (Code Civ. Proc., sec. 337; *Barrett* v. *St. Albans Hotel Co.*, 47 Vt. 313.)

TEMPLE, J.—This is an action to collect on behalf of creditors the unpaid balance due on stock of the Declez Granite Company, which has become insolvent. The plaintiff and the intervener have each obtained judgments against the corporation, and executions issued upon such judgments have been returned *nulla bona*. Only the defendants Flint, Conroy, and Halfhill answered.

The par value of the corporate stock of the Declez Granite Company is one hundred dollars per share. Of this stock Halfhill owned two hundred and seventy-five shares, Conroy fifty shares, and Flint ten shares. Each stockholder had paid twenty dollars per share upon his stock, and no more. There was no written subscription, but the parties getting up the corporation agreed with each other, orally, before the incorporation, that the corporation would sell the stock to each incorporator for twenty dollars per share, fully paid.

After incorporation,—to wit, on the twenty-eighth day of September, 1892,—a resolution was passed by the directors to the effect that "the secretary notify the subscribers to the capital stock of the corporation that the stock was now ready to be issued, and that all subscriptions are now due and payable at the office of the company." The notice was given, and each of the parties who were interested in the enterprise

paid twenty dollars per share on his stock, whereupon certificates of stock fully paid were issued as agreed upon. Only twenty dollars per share was demanded from the stockholders, and no other call was ever made.

A nonsuit was granted as to the defendants Flint and Conroy. The correctness of this order is questioned here, but as the nonsuit was granted for reasons which affect only the cases of Flint and Conroy, that matter will be separately discussed hereafter. In the other points all defendants are interested.

In regard to the issues which affect all the defendants, it is contended,—1. That the defendants purchased their stock as fully paid stock, paying therefor the market price; it was therefore, as to them, fully paid stock, and nothing remains unpaid on the stock; and 2. The claim is barred by the statute of limitations. Under this, it is contended, that the resolution of the board, above set out, was a call for the entire amount due on the stock, and the statute commenced to run against the demand from that date. The action was not commenced within five years after that time.

The appellants contend, in answer to these positions, that, conceding that defendants did not subscribe for their stock, but purchased the same from the corporation as fully paid and at its highest market price, they are still liable to creditors for the unpaid balance.

They deny, however, that there was any market value for the stock, and contend that since defendants themselves got up the corporation they must be judged as subscribers.

They also contend that the resolution referred to was not, and was not treated, either by the corporation or by the defendants, as a call for the full amount due on the stock, but only for the twenty dollars per share which the corporators had agreed should be received as full payment. And, further, that in no event would the statute begin to run against creditors until the debt of the creditor had matured and suit could be maintained thereon against the stockholders.

Certain constitutional and statutory provisions are supposed to have some bearing upon the questions here raised. Section 11 of article XII of the constitution declares: ''No corporation shall issue stock or bonds, except for money paid, labor done, or property actually received, and all fictitious increase of

stock or indebtedness, shall be void," etc.   To the same effect
is section 359 of the Civil Code.   Section 323 of the Civil Code
is to the effect that corporations for profit must issue certifi-
cates for stock when fully paid up, and may in their by-laws
provide for issuing certificates prior to full payment.

That the assets of a corporation, in case of insolvency, are
held in trust for its creditors is not disputed.   This is the so-
called trust-fund theory.   It was first announced by Judge
Story in *Wood* v. *Dummer,* 3 Mason, 308.   He said: "It ap-
pears to me very clear, upon general principles, as well as the
legislative intention, that the capital stock of banks is to be
deemed a pledge or trust fund for the payment of the debts
contracted by the bank.   The public, as well as the legis-
lature, have always supposed this to be a fund appropriated
for such purpose."   He says, further, that the creditors can
look only to this fund for payment, as the stockholders are
not personally liable.   The capital stock is the sole basis of
credit.   The shareholders, therefore, while entitled to all
profits, have no right to the capital until all creditors
have been paid.   Of course, a corporation, while it is
a going concern and lawfully carrying on the business for
which it was organized, may use its funds as freely as any
other individual.   It is not at all hampered by the idea that
it holds its assets in trust for creditors.   But when it has
ceased to be a going concern, and its assets are to be divided,
then the claim of creditors is prior to that of stockholders.
Then the court of equity looks beyond the mere fiction of a
corporate entity as the sole debtor.   The stockholders are
themselves the debtors, but as to them the creditor is deemed
to have agreed to look only to a special fund—the corporate
assets—for payment.

Debts due to a corporation constitute a portion of its
assets, and may be reached by creditors.   Among these are
unpaid subscriptions to stock, and these may sometimes be
collected by creditors when the corporation itself has re-
leased them, or in some way deprived itself of that right.
And as to creditors the obligation is unconditional, although
the corporation has accepted a qualified liability.   (*Sawyer*
v. *Hoag,* 17 Wall. 610; *Upton* v. *Tribilcock,* 91 U. S. 48;
*Scovill* v. *Thayer,* 105 U. S. 143; *Sanger* v. *Upton,* 91 U. S.
56; 2 Morawetz on Corporations, secs. 823 et seq.)

The contention of the respondents, which was sustained by the trial court, seems to be, that this proceeding on behalf of creditors, being an attempt to collect a debt due the corporation, as equitable assets, only that could be recovered which was a debt due the corporation, and that these stockholders never owed the corporation anything. To sustain the action is not only to enforce a liability they have never assumed, but to violate the conditions of their purchase. They were only willing to pay for the stock twenty dollars per share, fully paid, but would not have accepted it as a gift subject to an indebtedness of eighty dollars per share.

As far as the corporation is concerned, there is not much in this, for in this state fully paid stock may be assessed. The question concerns creditors only. As to them the corporation is presumed to have sought credit based upon its supposed capital of one hundred thousand dollars, actually paid in or due from its stockholders. Public policy requires that the fact whether a particular creditor did trust the corporation on that basis should not be inquired into. The constitution and laws require commercial corporations to have a capital stock, the amount of which shall be stated in the articles, and that this can be had of the corporation only for value. It must keep an account of its stock, by whom owned, and the amount of subscriptions unpaid, which may be inspected by every person having an interest therein. (Const., art. XII, sec. 14.) It may issue its stock and commence business before subscriptions are all paid up, and even before the stock is all subscribed for. Corporations often advertise the amount of its subscribed capital stock and whether it is fully paid.

In the case of the defendant corporation, the directors, if the theory of the defense is maintainable, might have truthfully advertised that it had a subscribed and paid-up capital of one hundred thousand dollars, when in fact it had only twenty thousand dollars. If by any lawful device this can be done, it is plain that the policy of the law will be defeated. And, again, the corporation being a mere agency of the stockholders, for it to release these obligations would be for a debtor to release his own liability. As the supposed capital is the sole basis of credit, the stockholders, who are

the real parties carrying on the business, must make the representation good.

While there can be no doubt that the rule supported by the weight of authority is as above stated, it is contended that a different rule has been established here. The first case cited in support of this proposition is *Stein* v. *Howard,* 65 Cal. 616. The Spring Valley Water Works sold some of its stock at less than par value. It was held that this did not violate section 11 of article XII of the constitution, which prohibits fictitious increase of stock. The rights of creditors were not involved. Nor were the rights of creditors involved in *Green* v. *Abietine Medical Co.,* 96 Cal. 322. The controversy was between different sets of stockholders. The question was whether certain stock had been fully paid, and whether a certain other issue of stock could be assessed without assessing all.

In *Kellerman* v. *Maier,* 116 Cal. 416, something was said which, unexplained, may be thought to sustain the position of respondents. That was an action brought by a creditor to enforce the liability of stockholders for unpaid balance of subscriptions. There had been several different issues of stock. Plaintiff himself owned a large amount of stock. He contended that the particular issue of stock in which he had purchased was fully paid and unassessable, and that he could recover the amount of his debt from the other stockholders. The court discusses the classes of stock which plaintiff claimed were not fully paid and holds against the plaintiff. As to the remaining issues of stock, which plaintiff contended were fully paid up, and from the owners of which he claimed nothing, the court said: "But it is admitted that as to the remainder of the stock issued the evidence shows that it was sold at the highest market price, and under the decisions of this court the purchasers are not liable for any unpaid balance." The record on that appeal shows that this statement was substantially a quotation from plaintiff's brief, including the reference to the decisions of this court. Neither the opinion nor the briefs in that case cite any such decisions, and there were none. The court having disposed of plaintiff's claim as to all the other stockholders, merely quotes from plaintiff's brief the admissions that these were not liable. It was a perfectly proper disposition of the case,

though, unfortunately, it may appear to be authority for a proposition which the court did not decide.

Reliance is placed upon a line of decisions made by the supreme court of the United States. They are, *Clark* v. *Bever,* 139 U. S. 96; *Fogg* v. *Blair,* 139 U. S. 118, and *Handly* v. *Stutz,* 139 U. S. 417. Those cases do, I think, greatly impair the trust-fund doctrine, and, in my humble judgment, the reasoning employed is not satisfactory. The questions discussed were not Federal questions, and it remains to be seen how generally the decisions will be followed. *Clark* v. *Bever,* 139 U. S. 96, was a case in which a construction company took some shares of stock from a railroad company in part payment for a debt due it. The par value of the stock received by the construction company was $350,000, and the debt satisfied by it was $70,000, twenty cents on the dollar of the par value. It was sought to hold the company for the unpaid subscriptions.

Had the case been the usual one where a road is constructed for a fixed sum of money and a definite amount of stock, it might, perhaps, have been held that the stock was fully paid; but the stock was given for a definite sum of money, and it was contended that it was the usual case of selling stock below par, and that no contract with the corporation could release the stockholder from his liability to creditors. The court expressly affirmed the doctrine of the cases above cited, but said the rule did not apply to that case. All the cases above cited from the reports of the supreme court of the United States, and many more, are examined and approved. The distinction attempted is shown as follows: "According to these cases, a stockholder, becoming such by formal subscription or by transfer on the books of the corporation, cannot be discharged to the injury of the creditors by any agreement, arrangement, or device to which creditors do not give their assent, and by which the stockholder is to pay less than the amount due upon such stock; thus, upon the ground stated in *Webster* v. *Upton,* 91 U. S. 65, that "neither the stockholders nor their agents, the directors, can rightfully withhold any portion of the stock from the reach of those who have lawful claims against the company," and that "the stock thus held in trust is the whole stock, and not merely that percentage of it which has been called in

and paid." The present case presents features that are not to be found in the others. It is not the case of an ordinary subscription of stock in a given amount; nor is it strictly one of an ordinary purchase of stock for purposes of investment. It is the case of an insolvent railroad corporation which, in consequence of its inability to pay creditors in money, was threatened with bankruptcy, and which refused or was unable to pay, except in stock which was without market value." But the court repeatedly declares that it has no desire to modify the salutary rule laid down in the cases cited.

In *Fogg* v. *Blair*, 139 U. S. 118, the last case is cited, but it is asserted that if stock is sold by a corporation, and issued as fully paid, creditors can inquire into the real consideration, and if it appears that the transaction was not fair, and that a reasonable equivalent was not given for the stock, the holders will be held liable to creditors as upon an unpaid subscription.

In *Handly* v. *Stutz*, 139 U. S. 417, similar views are expressed. In that case eight hundred shares of stock were given away. Three hundred shares were given to its stockholders. Upon these it was held that the stockholder was liable to creditors for the par value of the shares of stock. Five hundred shares were given as a *bonus* to purchasers of bonds. Upon these shares of stock it was decided that the stockholder was not liable. They were fully paid.

I must agree with counsel, that no sufficient grounds appear for the distinction made. But the court asserts the distinction and rests its decision upon it, and vigorously asserts the general rule, and, as to the shares of stock given to the stockholder, relies upon it.

In the subsequent case of *Camden* v. *Stuart*, 144 U. S. 104, Mr. Justice Brown, who wrote the opinion in *Handly* v. *Stutz*, 139 U. S. 417, took occasion to explain the position of that court upon this subject. He said: "It is the settled doctrine of this court that the trust arising in favor of creditors by the subscription to the stock of a corporation cannot be defeated by a simulated payment of such subscription, nor by any device short of an actual payment in good faith. And while any settlement or satisfaction of such subscription may be good as between the corporation and the stockholders, it is unavailing as against the creditors. Nothing that was

said in the recent cases of *Clark* v. *Bever,* 139 U. S. 96; *Fogg* v. *Blair,* 139 U. S. 118, or *Handly* v. *Stutz,* 139 U. S. 417, was intended to overrule or qualify in any way the wholesome principle adopted by this court in the earlier cases, especially as applied to the original subscribers to stock.''

Some few cases are cited from the state reports which, it is claimed, held a different view. Opposing counsel contend that there is no real difference. I only wish to say that, if they do hold a different principle, they are not in line with the current of decisions upon the subject.

There is nothing in the proposition that the respondents did not subscribe for their stock, but purchased it from the corporation. It was not necessary that they should in writing or otherwise formally agree to pay the par value of the stock. The fact that they owned the stock fixed their liability. (*Walter* v. *Merced Academy Assn.,* 126 Cal. 582, and authorities there cited.) In this case all should be deemed subscribers, for it was agreed among themselves that all stock should be sold for twenty dollars per share, fully paid up. The sale of the stock and payment for it, as agreed,—twenty dollars per share,—for the first time provided constituents for the company and gave it life. The sale of the stock was an ineffective device to escape liability for subscriptions.

These considerations seem to me to dispose of the contentions both of Halfhill and Conroy. If there was no call for the unpaid portion of the stock liability, the statute of limitations has not commenced to run, and we need not consider the further answer to the contention, that no cause of action would accrue to the creditors until the insolvency of the corporation gave to them the right to maintain a creditors' bill.

We are not inclined to extend the doctrine of *In re South Mountain Min. Co.,* 7 Saw. 30, 5 Fed. 403, to this case, even if we were prepared to indorse the principle there announced. This is not such a mining corporation as was there considered. We refrain, therefore, from a discussion of the question suggested.

Respondent Flint contends that he had ceased to be a stockholder before this proceeding was commenced. The evidence fails to show a transfer. The secretary of the corporation testified that one Snediker applied to him to have the shares

transferred to one Mahony, to whom Snediker said Flint had transferred the stock. He showed no authority from Mahony to act for him, and there is·no evidence that Mahony ever accepted or consented to such transfer. No transfer was in fact made on the books. In such a case, where the actual result may have been to transfer a liability and not·a thing of value, it is particularly necessary to show that the transfer was with the knowledge and consent of the transferee.

As to Flint and Conroy, the judgment was one of nonsuit. In such a case the presumptions are not strong for the correctness of the ruling. The evidence must be construed as strongly as possible the other way; for if there is any substantial evidence for the plaintiff, he is entitled to a judg· ment upon the merits.

The judgment is reversed and the cause remanded for a new trial.

McFarland, J., and Henshaw, J., concurred.