Judge Green
delivered his opinion.
The first objection taken to the decree appealed from is, that it affirms the appointment to Nancy H. Knight of four slaves, Ned, Matt, Belinda and her child, to be valid; and ¿this objection is well founded. To the validity of an appointment in pursuance of a general power, not prescribing the mode of appointment, it is necessary that it be *567 made in such a way, as would, if the property belonged to the person making the appointment, effectually pass his ti-tie. In this case, the only proof of the appointment is, that Nancy H. Knight, a married woman, separated from her husband, lived with Mrs. Walton, her grand-mother, before and after her divorce, and until her grand-mother’s death: that when information of the divorce was received in 1812, Mrs. Walton observed to a witness, as he believes in the presence of Mrs. Knight, “that she had heretofore conveyed certain negroes, to wit: Belinda and her child, Matt, Elsey, and a boy named Ned, to trustees for the benefit of the said Nancy ; but now, in consequence of the law aforesaid, I give them directly to Nancy. They are nowjiers.” There was no delivery of possession to Mrs. Knight, nor does it appear that she ever exercised any act of ownership over the slaves; nor is there any further account given of the existence of the deed of trust spoken of. And in Mrs. Walton’s will, whilst she gives to several of her descendants, property specified by name, and adds that it is the same before given to them, she gives these negroes to Nancy H. Knight, without intimating that she had given them to her before.
Independent of the Act of Assembly, I should think that such a transaction did not amount to a gift, but only to a declaration of an intention to give at a future period. The Act of Assembly, however, declares that no parol gift of slaves shall pass any estate in them, if the donor has continued in possession, or unless the slaves have come to the actual possession of, and remained with, th.e donee. This, if it was intended to be a gift or appointment, was therefore void.
Another objection taken to the decree is, that it does not conform to the former decree of the Court of Appeals, in respect to the manner in which the valid appointments made by Mrs. Walton, were to be accounted for by the appointees, if they claimed to participate in the subjects which were unappointed. The declaration of .the decree *568 of the Court of Appeals on that point, was, that such parties, to whom valid appointments had been made, could not claim any part of the unappointed subject, “ without bringing into account the subject so appointed;” equality jje;ng rule adopted by the Court, in such cases. The Chancellor understood this part of the decree as directing that the parties liable to account, should account for the value of the property appointed, as it was at the time of the appointment; and in this I think he was right. If the Court of Appeals had intended to decide, that the appointee should be placed in the same situation as if he renounced the appointment altogether, so that the property was to be considered as always continuing a part of the estate, they would have directed that the property and its increase, remaining in kind, should be brought into the distribution, and the party held to account for what he had disposed of, so as that it could not be returned in kind. But they direct that the whole subject appointed should be accounted for, without regard to the circumstance whether it remained in kind or not. The Court did not intend to prescribe the manner of accounting, but to leave that to be done upon the ordinary principles applicable to such and analogous cases.
In cases of intestacy, when one of the children has been advanced, if he chooses to bring his advancement into hotchpot, he does not thereby renounce his title, but retains it, and is entitled to have so much of the intestate’s estate as will, with what he has already received, make his part equal to that of the other children; and in such' case, his advancement is valued at what it was worth at the time it was made; which value is added to the distributable fund, without interest or any account for profits. This was the rule adopted in Beckwith v. Butler, 1 Wash. 224, and has been adopted also in Massachusetts and Pennsylvania; and this seems to be the rule in England.
In Kircudbright v. Kircudbright, 8 Ves. 51, it was held that an annuity granted by the father to a son, was to *569 be brought into hotchpot at its value at the time it was granted; or that the son, at his election, might account for the sums actually received under the grant; and I think these decisions are founded on the best reasons. By the advancement, the property-vests in the donee, and it is afterwards at his risque. The profits and increase are the profits and increase of his own property; and the donor can only be considered as having parted with the real value of the thing when given. If the property perishes, or in any way depreciates in value, it is the loss of the donee. He accounts for the value when received, because he has taken so much out of the estate of the donor. The interest, profits and increase, never were a part of the estate of the donor. They are in all cases the fruits, in part at least, of the care and attention of the owner; and if any expense is incurred in securing them, it falls upon the owner of the property. It is a fundamental principle, that the person who has the title to property, bears the loss arising from its destruction or deterioration, and is entitled to its increase and profits. This rule, in. cases of advancement and intestacjr, and in all cases falling within the same reason, is just and equal. Advancements are generally made to enable the child to engage with advantage, at the proper age, in the occupationJjy which he expects to make his living. If each child is advanced at the same age, to the same amount, each is advanced equally, although one be advanced twenty years before the other; each having the same capital advanced for his establishment in life. If the eldest son, in such case, had to account to the youngest son, in the partition of the residue of their father’s estate, for the interest, increase, and profits, of the money or property advanced to him, he-would, in effect, be giving to his younger brother a moiety of the fruits of his care, labor and expense, in the management of the fund advanced to him. The general rule, although it does not give an equality in amount, at the time of the final distribution, if we take into the consideration, the interest, profits, and in *570 crease of the advancement; yet it gives, as nearly as any general rule can give, an equality of benefit, considering the circumstances of the parties. To attempt a more per-feet equality, by taking into the estimate the interest, pro-an¿[ increase of the property, in part or in whole, according to the circumstances of each particular case, would be attended with great difficulty and'uncertainty, and be the source of infinite litigation. For this reason, by the custom of London, a daughter advanced in marriage, no matter to what amount, is considered as fully advanced, and barred from claiming any benefit of the orphanage part, unless the father declare, in writing, the amount of the advancement, so that it may appear what sum is to be brought into hotchpot. Civil v. Rich, Vern. 216.
It is said, however, that this is not like the case of advancement and intestacy, but rather like the case of a legacy to be equally divided among the legatees; the parties to whom valid appointments have been made, as well as the others, claiming under the will of Walton; and that in case, of such a legacy, if the executor delivered to any one of the legatees any portion of the property, before a division was made, the property, and its increase and profits, must be brought into the division. This is true, because such a delivery by the executor could not give a title to the legatee, to the property so delivered. It would remain a part of the original fund, to which each legatee was equally entitled, and its profits, and increase, would, therefore, be a part of the common fund; and if it perished, it would be a loss to the joint fund, unless it perished by the default of the legatee to whom it was delivered.
But,-in this case, the parties were not entitled to an equal partition, nor to have their proportions at the same time. Mrs. Walton was empowered to vest the legal title to any part of the property, in any one of the objects of appointment, at any time before her death, by an appointment at her pleasure, no matter how unequal, so that it did not exceed the bounds of a reasonable discretion. She was, in *571 fact, put into the place of the testator, and authorised to make such advancement within reasonable limits, as he might have made if in life, and to have the same effect as if he had himself made them, to pass the legal title subject to account, in the same way as if they had been made by him, and he had died intestate, or had directed an equal division of the residue, those who had received advancements accounting for thorn, if they claimed to participate in the residue, as if he had died intestate. This case is, therefore, substantially the same as the case of advancements and intestacy.
Whilst the Court of Chancery rightly decided, that the parties to whom valid appointments were made, if they claimed to participate in the unappointed residuum, were bound to account for the value of the subject so appointed, as it was at the time of appointment, the decree is erroneous in not requiring them to account for interest on that value, from the death of Mrs. Walton. At that time, the rights of the parties to the unappropriated residuum, and an account of the subjects appointed, according to their value when appointed, accrued and vested. The appointees were then entitled, subject to such accountability, to a portion of that residuum, and are of course entitled to participate in the subsequent profits and increase of the property composing that residuum; .They ought, therefore, to account for interest on the value of the subjects appointed, from that time. That value is to be considered as a part of the residuum, to be distributed at that period.
There is another error in the decree of the Court of Chancery, which may affect the interests of the parties very materially, in the distribution of the fund in question.
The effect of the original decree of the Court of Appeals, was, that any appointment made by Mrs. Walton, whenever made, or however unequal, was valid, if enough was left to give to every other object of appointment a reasonable share; a rule, which left a considerable latitude of dis-' eretion, as the testator intended, to Mrs. Walton, both as *572 to the time and value of the appointments. This reasonable share was to be judged of, whether the appointment was made to a child or grand-child, by looking to the whole number of children to share in the fund,- whether they were ¿¡eacj or aiive at the time of the appointment; the grand-children representing their deceased parents, and entitled to such reasonable share, as their parents, if alive, would have been entitled to, to be reasonably divided amongst them, according to Mrs. Walton’s discretion, fairly exercised. So that an appointment made to a grand-child, after the death of his parent, was not only to conform to this rule, as to its amount, in respect to what would be reasonable, in relation to his parent and the other children; but in respect to what would be reasonable in relation to the interest of the brothers and sisters of the appointee, in the division of the reasonable share of the parent amongst his or her children. Upon these principles, the question whether any appointment was valid or not, could only be determined by considering its value at the time it was made, in reference to the value of what remained to satisfy the reasonable share of all others entitled. If the appointment was upon these principles, good, when made, no subsequent increase in the value of the subject appointed, or diminution in the value of what remained, could affect the validity of the appointment, nor influence the subsequent distribution of the remaining subject, except so far as to consider so much as the value of the appointment when made, as appropriated to-that child, if appointed to a child, or if appointed to a grand-child, then as so much advanced to the stock of that child’s parent, and also to that child in respect to his brothers and sisters; and to be regarded and accounted for accordingly, in the distribution of what remained, either by Mrs. Walton exercising the discretion allowed to her, or of any residue not appointed, or not duly appointed, by her.
To illustrate and simplify this idea, let it be supposed that there had been only two children at the time of Walton’s death, and one of those children should have died *573 immediately after the death of the testator, leaving two children; and the property subject to appointment, upon the principles aforesaid, to have consisted of four young female slaves of equal value; and Mrs. Walton to have appointed one of these to the surviving child, and another to one of the grand-children. These appointments would be unquestionably good; for, as between the stocks, they would be perfectly equal, and enough would be left to provide for the other grand-child a reasonable share. Suppose Mrs. Walton to have made no other appointment, and after many years, to have died; one of,the un.appointed slaves having died, without any increase, in her life-time; the slave appointed to the grand-child having had a great increase, and that to the child, having had none; and the other having increase, which, together with the original slave, and the value of that appointed to the child, when appointed, were of the precise value of the slave and her increase, appointed to the grand-child. According to the-principles above stated, if both the child and grand-child appointees come into the partition, accounting for the value of the subjects appointed to them, the subject to be divided would be the value of the appointments when made, with interest thereon from the death of Mrs. Walton; and the slave not appointed, and her increase, and their profits accruing after Mrs. Walton’s death. The whole subject thus ascertained, would be divided into moieties, and the child would have so much in value of the unappointed property, as would, with the value of what was appointed to him and interest, make a moiety of the whole. The grand-child appointee would receive so much as, with the value of the subject appointed to her, with interest as aforesaid, would be equal in value to the fourth part of the whole subject. If-the grand-child appointee claimed no part of the unappointed subject, the only difference would be, that whilst the child would get precisely the same proportion of the unappointed property, the other grand-child would get all the residue, which would *574 be greater or less than she would get in the other case, as it happened that the value of the unappointed slave and her increase was greater or less. On the other hand, if the increase of the slave appointed to the grand-child, were taken ;nf0 jjie account for the purpose of ascertaining what proportion of the unappointed property was to go to the child, and what to the children of the deceased child, and the grand-child appointee claimed no part of the unappointed property, then the other grand-child would get nothing for the slave and her increase appointed to the grand-child; being of the full value of the unappointed slave and her increase, added to the value of the slave appointed to the child. That child would be entitled to the whole of the unappointed property, to make his share equal to that which has gone to his brother’s or sister’s family.
This consequence and inequality will occur, if the increase of the property appointed is brought into account, either for the purpose of ascertaining when the appointee ■ disclaims any participation in the unappointed fund, the proportion to which the respective stocks are entitled in the unappointed property; or, for the purpose of ascertaining to what the appointee accounting is entitled, out of that fund. This is sufficient to shew, that such increase or additional value from any cause or profits, cannot be brought into account, without over-turning the whole scheme of the original decree of the Court of Appeals.
The decree of the Court of Chancery directs, for the purpose of ascertaining the funds to be divided amongst the stocks, (so as to shew to what proportion of the property not appointed, each stock is entitled,) that the property appointed, whether the appointee claims a portion of the unappointed property or not, shall be charged, with its increase, at its present value, to the stock of which the appointee is a member. This is done particularly as to the family of Susan, one of the children of the testator; to whose daughter Sally Moore, (who renounces all participation in the unappointed residue,) Mrs. Walton appoint *575 ed a slave named Dorcas. The decree directs, that this slave and her increase should be estimated at their present value, as a part of the fund devisable amongst the stocks, and should be thrown into one of the nine parts, into which the whole was to be divided; there being nine stocks to come into the division: that this share, including the value of Dorcas and her increase, should be assigned to the children of Susan Morton, one of whose children Sally Moore was; and that, in the division of that ninth part, amongst the children of Susan Morion, the value of Dorcas and her increase, should be left to Sally Moore, as in full satisfaction of her interest in the fund, and the balance of that share divided equally between the three other children of Susan Morton, the brothers and sisters of Sally Moore.
The principle of this part of the decree is clearly wrong, as it has the effect of diminishing the shares of the brothers and sisters of Sally Moore, by the amount of the value of the increase of Dorcas, since the appointment to Sally Moore, although they belong exclusively to her; and may have the effect of precluding them from any participation whatever in the fund.
This erroneous principle is applied to the slaves well appointed to Mrs. Dupuy, which are brought, with their increase, into the account, to the prejudice of Mrs. Dupuy. The errors of the first decree on this point, were probably intended to be corrected by the last.
There is, also a mistake in the decree, in stating that Polly Jenkins had admitted that two slaves had been advanced to her; and that she had, by her answer, agreed to come into the partition, accounting for this advancement. She admitted only one slave Tilla to have been appointed to her; and stating that the slave had two children, declares that she does not choose to bring those slaves into hotch - pot. This refusal was probably owing to the belief, as the.expression of the answer indicates, that she could only come into partition upon accounting for all the slaves, Tilla and *576 her increase. She ought now, therefore, to have her electo come into the partition or not, upon the condition of accounting for the value of Tilla when appointed.
There is another error in the decree. Thomas Scott purchased a woman and child of the testator’s estate from Mrs. Walton, the trustee and executrix, for $>400, which he paid her. The increase of this sale is considerable;-and the whole stock of negroes is declared to be a part of the •'subject to be distributed, upon the ground, that Mrs. Walton could not transfer a greater interest in the slaves, than for her life. That is true, if she had only been a trustee; but she was also executrix, with power to dispose of the property for the payment of debts. Whether it was necessary to sell those slaves for that purpose, does not appear. But, as no fraud or collusion is charged upon the purchaser, he is entitled to claim those slaves as a purchaser from the executrix.
The decrees, in these particulars, must be corrected.
Judge Carr, concurred.
Judge Coalter.
As to the principal question made in this case, to wit: whether, in cases of valid appointments, and where the subject is to be brought into account for any of the purposes mentioned in the decree, it is to be estimated at its value at the time of the appointment, or at the time of the division, I think the decree is correct in confining it to the value at the time of appointment. I am the more inclined to this opinion, because this Court would not have been without the support of British authority, had it directed the unappointed surplus to be equally divided amongst all the objects of the testator’s bounty, without regard to appointments made, provided the dividend so to be made, would have given to each object who had received no» *577 thing, a share which, if it had been given by the trustee, could not have been declared void as illusory.
This Court seems to have proceeded with analogy to the Statute of distribution and hotchpot, and, taking equality as equity, may well be presumed to have intended that kind or rule of equality, which the Courts have adopted in cases of that kind, and which, if not fully effecting that object, comes nearer to it than any other rule that could be adopted. The parties benefited by this liberal extend sion to them of the principles governing in such cases, ought not to Complain, especially as if the analogy could not hold throughout, the Courts, rather than encounter the difficulties, and perhaps great injustice, resulting from a contrary course, might be driven to the mode of division first above-mentioned.
On the other points I also agree with the Judge who has preceded me, and in the decree prepared to be entered.*

 The President and Judge Cad ere, absent.'