# WHEELING.

KYLE *et ux. v.* CONRAD *et als.*

Submitted January 31, 1885.—Decided April 22, 1885.

1. If a father dies intestate having advanced to some of his children by conveying to them real estate and giving to them personal property by way of advancement, when his estate is divided and distributed, his children, to whom such advancements have been made, should be charged, when their advancements are brought into hotchpot, with the value of the property advanced, when received, but not with the rents and profits of the land conveyed to them severally, nor with the increase of the personal properties nor with the interest on the value received of either the real or personal property during the lifetime of the father; but they must be charged with interest from the death of the father on the value when received of all property real or personal so advanced. (p. 780.)

2. If a father convey in fee simple to a daughter and her children born or to be born or simply a daughter and her children a tract of land by way of advancement, the whole of such tract of land should be regarded as an advancement to the daughter, and if her father dies intestate, she should be charged with the *fee simple* value at the time the land is given of the entire tract of land with interest on this value from the death of the father. (p. 774.)

3. It will make no difference in such cases, whether the consideration for the deed is recited to be the natural love and affection of the father for the daughter or the natural love and affection of the father for his daughter and her children. In either case it must be regarded as an advancement to the daughter of the whole tract of land. (p. 779.)

4. If the circuit court by its decree determines a point put in issue by

the pleadings, or if the court on an exception to a commissioner's report decides a point and by a decree refers the cause back to the commissioner, and he makes a report in accordance with the point so decided, and the court renders either a final decree or a decree settling the principles of the cause upon such report, the appellate court will review the point so decided, though there was no exception in the circuit court to the commissioner's report on the matters embraced in the decision of the circuit court on this point. (p. 772.)

GREEN, JUDGE, furnishes the following statement of the case :

Ulery Conrad, of Pendleton county, West Virginia, died intestate on November 11, 1867, seized in fee of six tracts of land in Pendleton county, West Virginia, supposed to be of the following size and value : A tract of 1,311 acres on the South Branch worth $6,000.00; a tract of 133 acres on the South Branch, worth $655.00 ; a tract of 24 acres in Hays Gap worth $240.00; a tract of 37 acres in Hays Gap worth $37.00; a tract of three acres in Hays Gap worth $30.00; a tract of 24 acres in Hays Gap worth $120.00, and a tract in Randolph county of unknown size and value. He left surviving him as his heirs five children and the descendants of two other children, who had died before, and his widow, Sarah Conrad. His children, who survived him were, a son, Laban B. Conrad, and four daughters; Timna, who had inter-married with Jacob Hammer, who was living ; Asenith, who had inter-married with John Davis, who was living; Delineh Hammer, a widow, and Deniza Davis, a widow. Another son, Sampson Conrad, had died in the lifetime of his father and left surviving Ulery Conrad two sons, William Conrad and Jacob Conrad, and one daughter, Mary, who married Nicodemus Bodkin, who was living ; and one other son of Sampson Conrad, Lorenzo by name, died before Ulery Conrad, leaving infant children, whose names and number were unknown, but they survived Ulery Conrad and were among his heirs. Ulery Conrad also had a daughter, Iska Jane, who inter-married with George Payne, and both died before Ulery Conrad, leaving an only child, Sarah Payne, who survived her grandfather and was one of his heirs. She was not twenty-one years old at her grandfather's death.

Ulery Conrad in his lifetime advanced to all his daughters

except Iska Jane Payne. On December 27, 1854, he conveyed to Timna Hammer and her children born and to be born 270 acres of land in Pendleton county, and on the face of the deed it was stated to have been made for the consideration of natural love for his daughter Timna and her children and one dollar. On the same day he conveyed to Delilah Hammer, who was a widow, and her children 684 acres of land in Pendleton county, the consideration expressed being his natural love for his daughter and one dollar. Very shortly afterwards, on February 8, 1855, he conveyed to Asenith Davis and her children born and to be born 280 acres of land in Pendleton county, the consideration expressed in the deed being his natural love and affection for his daughter and her children and one dollar. On the same day he conveyed to Deniza Davis and her children born and to be born 237 acres of land in Pendleton county, the consideration expressed in the deed being his natural love and affection for his daughter Deniza Davis and her children and one dollar.

On September 27, 1869, Sarah Ann Payne, the granddaughter of Ulery Conrad and one of his heirs, by George Payne, her next friend, brought a suit in the circuit court of Pendleton against the widow and all the heirs of Ulery Conrad, deceased, including the husbands of the female heirs, who were married, for the purpose of having dower assigned to Sarah Conrad, his widow, and a partition of his lands among his heirs. The bill stated all the above facts; and as exhibits with the bill were filed the four deeds above mentioned made by Ulery Conrad to four of his daughters and their children. The bill prayed for an assignment of dower to the widow and a partition of the land, which descended to the heirs of Ulery Conrad according to law and equity after deducting the advancements, which he had made to these four daughters, and for the charging of Laban B. Conrad with the rents and profits of the land descended from his father, Ulery Conrad, which he had been in possession of since his father's death, and to that end the bill prayed, that the court should ascertain what real estate Ulery Conrad died seized of and the amounts and fee simple value of the same, who had been in possession of the same since his death, what advancements both real and personal the said Ulery Conrad

had made to his children and their value, and for general relief.

On November 16, 1871, the court rendered the following decree : " This cause came on to be heard this — day of November, 1871, upon the bill and exhibits and the answer of H. H. Masters, the guardian *ad litem* of the infant defendants, and replication thereto as to said defendants, and upon the bill as taken for confessed as to the adult defendants, proper process having been properly served on all of them for more than two months, and they still failing to appear and answer, and was argued by counsel. Whereupon the court doth adjudge, order and decree, that this cause be and hereby is referred to commissioner Masters, who is directed to summons before him any and all persons, that he may be required to summon by either of the parties in interest in this suit and ascertain and report to this court at the next term :

" First.—What real estate Ulery Conrad died seized of.

" Second.—What the value of said estate is.

" Third.—Who has been in possession of said real estate since the death of said Ulery Conrad.

" Fourth.—What the value of the annual rents and profits of said estate is.

" Fifth.—What advancements, if any, were made by said Ulery Conrad to each of his children, and the value of such advancements."

Seven depositions were taken in reference to the matters referred to the commissioner; and on March 6, 1872, he made his report, which I deem it unnecessary to state further than that it was a response to the enquiries submitted to him by the decree. The following exceptions were filed to this report :

"This report is excepted to by defendants John Davis and Asenith, his wife, Jacob Hammer and Timna, his wife, Delilah Hammer and Deniza Davis on the following grounds :

"First. That they are not liable for the rents and profits of the several tracts of land conveyed by Ulery Conrad in his lifetime to his daughters Asenith, Timna, Delilah and Deniza and their children.

"Second. That Asenith Davis, Timna Hammer, Delilah Hammer and Deniza Davis are joint-tenants with their children in the several tracts of land conveyed by the deed filed with the plaintiff's bill, and the commissioner should have reported only their interests as such joint tenants.

"JOHN DAVIS AND OTHERS,

"*By Counsel.*"

On April 17, 1872, the court expressing the opinion, that the value of the advancements at the time they were made is not sufficiently shown by the report, sustained their exceptions recommitted the cause to the commissioner, who was directed to re-state the value of said advancements and report the same.    On March 14, 1873, the commissioner made his second report; and on April 15, 1872, the court set it aside, because he had not given notice to the parties of his proceeding to make his report.    At same time, as the plaintiff had come of age and married with John W. Kyle, it was ordered that the suit proceed in the name of John W. Kyle and Sarah Ann his wife.  John Davis and Asenith his wife entered their appearance; and the cause was recommitted to the commissioner to make report after giving proper notice to the parties.    Three other depositions were taken on the matters submitted to the commissioner.  By leave of the court John Davis and Asenith, his wife, Jacob Hammer and Timna, his wife, and Delilah Hammer and Deniza Davis, widows, filed on October 4, 1876, answers to said bill.    So much of these answers, as I deem important, is as follows :

"Respondents further say that the female respondents never received any money from their father Ulery Conrad by way of advancements except $159.43½ to Asenith and Deniza, nor did the female respondents receive by way of advancements the several tracts of land set forth in the plaintiff's bill, to-wit, Timna 270 acres, Delilah 684 acres, Asenith 280 acres and Deniza 237 acres, but an inspection of the several deeds of conveyance filed as exhibits with the plaintiff's bill marked respectively "A," "B," "C" and "D" will show to the court that the female respondents are joint-tenants in the several tracts of land conveyed to them respectively and to their children, each being a joint-tenant with her children on the tract of land so conveyed, and that only the interest of each as joint-

tenant with her children can be brought into *hotchpot;* this they are perfectly willing may be done. Asenith Davis has six children, her interest being one seventh in the tract of land conveyed by the deed bearing date February 8, 1855, and filed with plaintiff's bill as Exhibit "D."

"Respondent Timna Hammer has eight children, her interest being one ninth in the tract of land containing 270 acres conveyed by the deed bearing date December 27, 1854, a copy of which is filed with the plaintiff's bill as Exhibit A.

"Your respondent Delilah Hammer has nine children, her interest being one tenth in the tract of land containing 684 acres conveyed by the deed bearing date December 27, 1854, a copy of which is filed with the plaintiff's bill as Exhibit 'B.'

"Your respondent Deniza Davis has four children, her interest being one fifth of the tract of land containing 237 acres, conveyed by deed bearing date February 8, 1855 a copy of which is filed with complainant's bill marked Exhibit "C." The female respondents having no other interest than the above in the several tracts of land, they insist that if they are liable for anything in the way of rents and profits, which they claim they are not, it can only be as follows in the several amounts reported by commissioner Masters, to-wit, Asenith Davis to one seventh of the amount reported against her, Timna Hammer to *one ninth* of the amount reported against her, Delilah Hammer to one tenth of the amount reported against her, and Deniza Davis to one fifth of the amount reported against her. Of course the same objections apply as to the values placed upon the said several tracts of land, and charged respectively to these respondents, and the above reductions must be made—that is, Asenith can only be charged with *one seventh,* Timna with one ninth, Delilah with one tenth, and Deniza with one fifth of the lands respectively conveyed to them and their children.

"Respondents having fully answered pray to be hence dismissed with their costs by them in this behalf expended."

The following is the commissioner's report made September 22, 1874, after stating that he had given the proper notice to parties and had taken the three depositions before referred to :

"Your commissioner having carefully considered the said testimony, as well as that formerly taken by him and his reports formerly made to the court, reports that he can see no good reason why the report of March 6, 1852, should be changed or in anywise altered except in this that the land conveyed to Delilah Hammer should be estimated at the sum or value of $1,700.00 instead of $1,350.00, and the annual rents at $85.00 instead of $75.00 per year, and the land deeded to Timna Hammer be estimated at $950.00 instead of $1,050.00, and the annual rent at $45.00 instead of $55.00. Your commissioner, with the said changes thereto, *adopts* and fully confirms said report."

On October 12, 1878, the court sustained the first exception to the report, holding that the daughters of Ulery Conrad were not liable for the rents and profits on the several tracts of land conveyed to them and their children by their father, but declined acting on the question raised by the second exception, or deciding whether the daughters, to whom advancements had been made, should be charged with the full value of the lands conveyed to them and their children or only with the value of their interest in said lands, and directed the commissioner to make out a statement based on their being charged only with the value of their interest in these lands so conveyed. The statement required by this decree to be made out by the commissioner was made on March 7, 1879, accompanied by his report. This statement was not excepted to, and on April 8, 1879, the decree was entered by the court, which recited among other things, that the cause was heard on certain papers and the answers of the defendants above given and on the reports of commissioner of March 6, 1872, and March 17, 1879, and exceptions to report of March 6, 1872. The decree then proceeds as follows:

"On consideration whereof, the court is of opinion that the exceptions taken to the said report of March 6, 1872, in this that Asenith Davis, Timna Hammer, Delila Hammer and Deniza Davis should not be respectively charged with the value of the real estate conveyed by Ulery Conrad to them and their children is not well taken, and the said exception is overruled, the court being of the opinion that the said Ulery Conrad intended the real estate so conveyed by him

to each of his daughters to be an advancement out of his estate to each of them to the extent of the value of such real estate to each conveyed. And the court is further of the opinion that the said daughters of Ulery Conrad should not be charged with the rents and profits prior to the death of their father of the real estate so conveyed to each of them, thereupon it is adjudged, ordered and decreed, that the said report of March 17, 1879, be confirmed."

This decree then appointed commissioners to ascertain, whether the lands which descended from Ulery Conrad could be partitioned in kind, and then proceeds as follows:

" And this cause is again referred to commissioner Masters, who is directed to ascertain and report to the court at its next term the amount due from Laban B. Conrad for the use and occupancy of the lands of Ulery Conrad, which the said Laban B. Conrad has been in possession of since the death of the said Ulery Conrad, and also make a statement showing what the advancement to each of the daughters will amount to, charging the value of the land, at the time the deeds were made, with interest from the death of their father."

Three other depositions were taken relative to the matters to be enquired of by the commissioner, who made his report on June 3, 1879, which was not excepted to by any of the parties. On October 14, 1879, the commissioners appointed to assign the widow dower made their report, which I need not state at length. It concluded as follows:

" Your commissioners are of the opinion that the real estate of Ulery Conrad is not partitionable among those entitled thereto, and especially before the dower-rights of Sarah Conrad shall have ceased—that is, we are of opinion, that the interests of the heirs will be enhanced by selling the land and dividing the proceeds; and at the same time your commissioners report, as far as they can learn, a majority of the heirs are in favor of dividing the lands."

The death of Asenith Davis was suggested, and by consent the cause was revived in the name of John Davis, administrator of Asenith Davis, and a *scieri facias* was issued to revive it against her heirs; and the deaths of Mary A. Davis, John Davis and Sarah Conrad being suggested, on the plaintiff's motion the cause was sent to rules with leave

to the plaintiff to file an amended and supplemental bill. This order was made November 11, 1881, probably because the original bill had been lost from among the papers of the cause. The amended and supplemental bill was filed; all the proper parties were made defendants; and the proceedings in the cause up to that time set out, and the substance of the lost original bill was stated; and it prays, that the share of the female plaintiff in the lands, of which her grandfather died seized, might, if practicable, be assigned to her in kind, to be held by her in severalty, and for a partition of all the lands; that all advancements made by Ulery Conrad be accounted for; and that the account of the rents and profits of the estate since the death of Ulery Conrad be taken and a proper decree be rendered for them in favor of those, to whom the same may be coming, against those, who are responsible therefor; and for general relief.

On June 19, 1882, the court rendered the following decree:

"This cause came on this the 19th day of June, 1882, to be further heard upon the papers formerly read and the proceedings heretofore had herein, the amended and supplemental bill and exhibits filed therewith, the process returned duly executed on all the home-defendants, and order of publication awarded against non-resident defendants duly published and posted, and the cause regularly set for hearing at rules, and none of the defendants appearing to plead, demur to or answer said amended and supplemental bill, the same was taken for confessed, and was argued by counsel. On consideration whereof the court doth adjudge, order and decree that this cause be referred to M. K. Boggs, one of the commissioners of this court, who is directed to make and state the following accounts, to-wit:

"1. An account showing what amounts are due from Laban B. Conrad for the use and occupancy of the lands of Ulery Conrad, deceased, which the said Laban B. Conrad has been in possession of since the death of said Ulery Conrad.

"2. To make a statement showing what the advancements to each of the sons and daughters of said Ulery Conrad, deceased, either in money or lands, will amount to, charging

the value of the land, at the time the deeds were made to each of them, with interest on said value from the death of their father, Ulery Conrad, deceased.

"3. To ascertain what lands were owned by the said Ulery Conrad, deceased, at the time of his death, their character, location and value annual and absolute, and whether the same are partitionable among those entitled to them; said commissioner shall take the statements heretofore made by commissioner Masters as *prima facie* correct, but with leave to any party interested to take additional testimony to amend and correct said statement if necessary."

Four other depositions were taken relative to the matter referred by this decree to the commissioner; and on October 31, 1882, the commissioner made his report, to which two exceptions were filed; and on June 14, 1883, an order was made, and by the consent of parties these two exceptions were sustained, and the case was referred to a commissioner to re-form and re-state this report in accordance with said exceptions and report forthwith. A deposition was taken with reference to the matter contained in one of these exceptions; and the re-formed statement and report was made the same day; and on the next day, June 15, the following decree was entered:

" This cause came on again this day to be further heard upon the papers formerly read and the report of commissioner M. K. Boggs made in pursuance of decree rendered at the June term, 1882, and the June term, 1883, without exception to the report made under decree of the June term, 1883, and was argued by counsel. On consideration whereof said first mentioned report is approved and confirmed except in so far as it is modified by said last mentioned report, and said last mentioned report is also ratified and confirmed, and the court doth declare that Laban B. Conrad is due the estate of Ulery Conrad, deceased, on account of the rents of the home-place and Skidmore lands in the sum of $1,498.26, as of the 11th day of November, 1882; that the advancements to Delilah Hammer and her children aggregated the sum of $1,995.00 as of said last mentioned date; that the advancements to Timna Hammer and her children aggregated the sum of $1,650.00 as of said date; that the advancements to Asenith

97

Davis and her children aggregated the sum of $1,481.44 as of said date ; that the advancements to Deniza Davis and her children aggregated the sum of $1,291.44 as of said date ; and that the advancements to Sampson Conrad aggregated the sum of $1,505.12 as of said date.   And it being apparent to the court that a sale of the home-place and Skidmore land, belonging to the estate of Ulery Conrad, deceased, and of the Hays Gap land will have to be made in order to partition the same among the parties entitled thereto, and that the same is susceptible of advantageous sale in four parcels, it is adjudged, ordered and decreed, that George A. Blakemore, J. Ed. Pennybacker, W. F. Dyer and Charles P. Jones, who are hereby appointed commissioners for the purpose, shall  proceed to sell said lands, consisting 1,311 acres and 133 acres lying on the South Branch, 24.393 acres and 24 acres, lying in the Hays Gap in this county, by publication in front of the court-house of this county upon the following terms: Costs of this suit and of said sale cash in hand, and the residue in three equal annual instalments from the day of sale, with interest from the day of sale, taking from the purchaser bonds with good and approved personal security for the deferred pay-ments, and retaining a lien until the future order of the court ; and said commissioners shall sell the home-lands in two par-cels as nearly equal as may be, and the Skidmore lands and the lands lying in Hays Gap separately, and for the purpose of dividing the home-lands they are authorized to employ a competent surveyor to do such surveying as may be neces-sary ; but before said commissioners shall advertise as afore-said, they shall give notice of the time, place and terms of sale by advertisement published in the South Branch Gazette and by notices posted at five or more public places in the neigh-borhood of said lands, and shall  enter into bond before the clerk of this court with security to be approved by him in the penalty of $16,000.00, and with conditions for the faithful performance of their duties under this or any future decree in this cause."

From this and the preceding decree, on which it was founded, H. H. Davis, Granville Dyer and Catharine his wife, Oliver Armstrong and Jane his wife, Robert Davis, in his own right and as administrator of Mary Ann Davis, de-

ceased, Frank Anderson, sheriff, administrator *de bonis non* of Asenith Davis deceased, J. T. Kelley, executor of Sarah Conrad deceased, John William Conrad, Joseph E. Conrad, Lorenzo D. Conrad, Deniza Davis, Delilah Hammer, Jacob Hammer and Timna his wife and Jacob Conrad applied to a judge of this Court for an appeal and *supersedeas;* which was awarded them.

*J. Bumgardner Jr.* for appellants.

*G. A. Blakemore* for appellees.

GREEN, JUDGE:

The errors assigned in the petition for an appeal in the proceedings in this cause, which, if they be errors, are all carried into the last decree entered by the court below in this cause, are, first: That the court authorized interest to be charged upon the estimated value of the lands conveyed to the several daughters of Ulery Conrad from the date of his death; second: That interest on the money-value of the lands was not, as it should have been on the theory of a moneyed hotchpot, charged only from a period twelve months after Ulery Conrad's death; third: That the children of the different daughters of Ulery Conrad, to whom jointly with their mothers lands had been conveyed, ought to have been made parties, though their mothers were still living, whereas none of these children were made parties except in cases where their mother was dead; fourth: That the daughters of Ulery Conrad were charged with the full value of the land conveyed to them by their father as an advancement. They should have been charged only as an advancement and be required to bring into hotchpot what the father had given to the daughters individually, and not what he had given to them and their children jointly. These daughters had from five to thirteen children, as the record shows, and therefore they had in the land deeded to them and their children only from one fifth to one thirteenth part of the land given to the daughters individually, and they should have been charged only from one fifth to one thirteenth part of the value of these lands instead of being charged with the full value of the lands as an advancement. These are all the errors assigned or re-

lied upon in the argument of the counsel for the appellants; and as there are no errors, which I can see, in this record, if these are not errors, I shall confine my attention to these alleged errors.

It is claimed by the counsel for the appellees, that this Court can not consider these assigned errors, because, as the last report of the commissioner was not excepted to, the parties waived all objections to it, even though they had filed exceptions to previous reports containing the assigned errors ; and they rely upon *Kees, Executor* v. *Kees's Creditors*, 2 Grat. 117, syl. 2, and *Simmons* v. *Simmons's Administrator*, 33 Grat. 451, syl. 2. These cases certainly establish the position, that, unless errors appear upon the face of a report, they can not be taken advantage of for the first time in the Appellate Court, when no exceptions were taken to the report in the court below ; and that an error in a commissioner's report not appearing on its face, and to which no exception was filed in the court below, will be disregarded by the Appellate Court, even though the identical error had been committed in the making of a previous report, and it had then been excepted to, and the cause had been remanded to the commissioner without deciding on this exception ; for in such a case this error not being excepted to in the last report of the commissioner will be regarded as waived by the parties, who on account of it had excepted to a former report. But this principle has no application in this case. For the court itself in the decree of April 8, 1879, had expressly decided, that the daughters of Ulery Conrad, to whom and their children jointly lands had been given and conveyed, were chargeable with the whole value of such real estate, and not with the value of the undivided interest of the daughters. It is of this decision carried into the last decree, that the appellants complain in their fourth ground of error, and not of the commissioner's report ; for he could not commit error in following the directions of the court. The same is true of all the other supposed errors, of which the applicants complain.

Thus their first assignment of error, that the court erred in authorizing interest to be charged on the estimated value of the lands advanced to the daughters from the date of the death of Ulery Conrad. Now this was no error of the com-

missioner; for in the decree of April 8, 1879, the court expressly directs the commissioner to charge interest on the value of the land in this manner, and it was the duty of the commissioner to follow this direction, and he would have been compelled to do so by the court. It was therefore obviously useless to except to the report of the commissioner, because he had followed the directions of the court in making his report. It was no error in the commissioner; if an error at all, it was one committed by the court, which of course can be examined into by this Court. The same may be said of the second assignment of error by the appellants; and the third is one, which has no relation to the commissioner's report. The court could have decided these matters, of which the appellants complain, even if there had been no exceptions to the commissioner's report, as they were put in issue by the pleadings, these issues having been made by the answers of defendants, which were filed on October 4, 1876. And even if the courts had not decided these points, they could have been considered by this Court, as they were errors of law, if errors at all, appearing on the face of the commissioner's report, which might therefore have been considered by this Court, even though there had been no exceptions to the commissioner's report filed in the court below.

The most important of these alleged errors is that contained in the plaintiff's fourth assignment of error, that is, that the value of the entire tracts of land were regarded as advancements to the daughters, when they were not conveyed to them, but to them and their children as joint-tenants, which gave them a very small interest in the land, and they should have been held to have been advanced only to the extent of the value of their several interests, and not to the extent of the whole value of the land. To sustain this position they rely solely upon the wording of our statute on the subject, which is: " When any descendant of a person dying intestate as to his estate or any part thereof, *shall have received* from any intestate in his lifetime any estate, real or personal by way of advancement, and he or any descendants of his shall come into the partition and distribution of the estate with other parceners and distributees, such advancements shall be brought into hotchpot with the whole estate real and personal, de-

scended or distributable, and thereupon such party shall
be entitled to his proper portion of the estate real and per-
sonal." It is insisted, that under the very words of this statute,
if a daughter has had a conveyance of a tract of land to
her and her children as joint-tenants by way of advance-
ment, she can not be regarded as having *received from her father*
anything but such portion of this tract of land, as she as one
of the joint-tenants is absolutely entitled to, and that she
ought to be required to bring into hotchpot only this undi-
vided interest in this tract of land, which she owns as such
joint-tenant, precisely as if her father by a separate deed had
conveyed to her by way of advancement such undivided part
of the tract of land; and that the uniting of her children as
grantees in the deed and the conveying of the whole tract
of land to her and her children jointly as an advancement
cannot justify under the wording of this statute, the requir-
ing of her to bring the value of the entire tract in hotchpot.

Statutes requiring heirs and distributees of a person, who
dies intestate, to bring into hotchpot in the distribution of
the estate, what had been received by them as advancements
from such person in his lifetime, have always been construed
very liberally to carry out the purpose of such acts, to pro-
duce equality in the distribution of the intestate's estate
among those bearing the relation to him, which in the ab-
sence of a will must be presumed to have been the wish of the
deceased person. And if by following closely the letter of
the statute this its object will be defeated, the courts have
never hesitated to disregard the *letter* of such statutes and to
require that to be brought into hotchpot, which the letter of
the statute does not require, but which its spirit does re-
quire. By the word advancement used in the statute is
meant *a gift* by a parent to a child or descendant for the
purpose of *advancing him or her in life.* *Barber* v. *Taylor,*
9 Dana 84, is a good illustration of the liberality which
the courts have always exercised in construing such statutes,
in order to carry out their spirit, even though in so doing
the letter of the statute is disregarded. The Kentucky
statute was copied from the fifteenth section of the act of
Virginia of 1785, directing the course of descents, and
was thus worded: " That when any children of the intestate

or their issue *shall have received* from the intestate in his life-time any real estate by way of advancement, and shall choose to come into partition with other parceners, such advancement shall be brought into hotchpot with the estate descended." The act requiring advancements of personal estate to be brought into hotchpot was substantially the same.

It will be seen at a glance, that, so far as the question before us is concerned, our statute is worded almost exactly, as was the act of 1785, and as was the Kentucky statute; yet under these statutes in *Barber and others* v. *Taylor's Heirs*, 9 Dana 84, it was decided, that a conveyance made by the father to the husband of his daughter by way of advancement to his daughter, was to be regarded as an advancement to the daughter. As this amounts to a construction of our statute, I will quote at some length the reasoning of the court, which led to this construction of our statute. The court say on page 85:

"Except as to the period of valuation these enactments of the Kentucky statute are substantially like the 5th section of the statute of distributions, enacted in England in the 22d and 23d Car. II, ch. 10, and therefore the judicial interpretation of the latter, established when the former was created, should be deemed equally applicable to these cases. In *Edwards* v. *Freeman*, 2 P. Wms. 435, which is the leading case on the subject, it was decided, that in determining all questions concerning advancements the object and intention of the father who gave are to be chiefly considered; that a provision to take effect after the death of the father or in reversion or even contingently, whenever it can be deemed of value, may be considered as an advancement *pro tanto*; that *equality* was the great object of the statute, which should therefore be considered as ' *a parliamentary will*,' and consequently, that a settlement, secured before marriage and in *consideration thereof*, upon a then unborn first daughter of the party making it should after his death intestate be deemed an advancement, which should be brought into hotchpot.

"And in *Wayland* v. *Wayland*, 2 Atk. 635, Lord Hardwick decided, that a settlement on a son for life, remainder to his wife and then to his children, should be considered as an advancement to the son to the whole extent of the value of the

entire estate, even though he had received only a life-estate and his wife, a stranger in blood to his father, was by the terms of the gift entitled contingently to the life-estate in remainder. These doctrines seem to us to be as just and reasonable as they are undoubtedly authoritative. They virtually recognize as a controlling principle the intestate *father's intention;* and therefore virtually decide that whatever he intended as an advancement, and would have so treated, at his death should generally, if not invariably, be so considered without regard to the mode of making or securing the actual enjoyment of it, concerning all which he should be the sole arbiter. And therefore there could be no doubt that, if a father should vest in a stranger the title to property, in trust for a daughter, the estate thus intended for her by such a provision should generally be deemed an advancement, even though by the mal-conduct of the trustee she had lost the whole benefit of the provision.

"A gift of money or other personal property to the husband of the donor's daughter, though the husband by wasting or loosing it might prevent his wife from deriving any benefit from it. So land given in *frank marriage* to the husband and wife and to the survivor of them and their issue in tail, the wife being the daughter of the giver, would be an advancement to her, to the full extent of the value of the entire estate, although the husband might survive her, and might also dock the entail, and thereby monopolize the whole estate, yet in distributing the intestate father's estate, her children would be charged with the value of the estate, thus enjoyed and converted by their father, because their grandfather so intended and provided, and because the object of the statute was to distribute his estate as he himself would have done or may be presumed to have intended. Nor could we doubt that a conveyance of land to the husband of the conveyor's daughter, in consideration of his being her husband, should be considered as an advancement to her, just as much as if the conveyance had been to herself alone, or to her and her husband as tenants of the entirety. * * * * * * * * * * It is not material to enquire whether the *fee* should be an advancement to Mrs. Barber or to her children, or to all of them in succession. Her children only represent her, and

can be entitled to no more than she would be entitled to, were she now living; and if she were yet alive we could not doubt, that she would be justly and legally chargeable with the land conveyed to her husband, as so much received by her from her father, in the manner deemed best for her by him."

Judge Lomax in his work on Executors vol. 2 page 367, treats these two English decisions above cited as properly construing the Virginia statutes with reference to hotchpot, which were substantially the same as the English 22 and 23 Car. II, ch. 10 sec. 5, and as our statute above quoted (Code of West Virginia, ch. 78 see. 13 page 486)· We regard these English cases as authoritative constructions of our statute and entirely approve the quotations above given from 9th Dana, and adopt them as our construction of our statute.

These views were approved in *Stevenson, &c.* v. *Martin, &c.*, 11 Barb. 485, where it was decided that *"the intention of the donor to advance his daughter will be presumed* from the fact that he conveys to the husband upon the sole consideration of the existence of the marriage-relation between them. But if she be dead at the time of the conveyance no such presumption will be entertained as a against her children." See syllabus 2. These views were again approved in *Bowles* v. *Winchester, &c.*, 13 Barb. 1, and they were there applied to a case where the devise (and it was stated to apply equally to a conveyance) was made by a father to his daughter during her natural life and at her death to her living issue; and if. she died without leaving issue, then the property was to revert to the heirs of the father. The court held that this was an advancement to the daughter of the whole land, as if she had been given a *fee simple* and not a life-estate, and she was charged with the fee simple value of the land as an advancement to her. The land was in that case devised by the father to his daughter, Mrs. Winchester, for life and then to her children, and the father died intestate as to a part of his estate worth $100,000.00. The question was what Mrs. Winchester should bring into hotchpot in the partition and distribution of this $100,000.00, as to which her father died intestate. The court says on page 9: "A devise was made to Mrs. Winchester giving her an estate for life and then to her

children. The object of the testator was to provide for his
daughter and her descendants, and whether so or not this is
the effect of this provision of his will; and we see no injus-
tice in recognizing the rule, that, when the estate passes to the
tenant for life and then to her issue born or to be born and
no children in being at the death of the devisor, the tenant
for life must bear the burden in order to equalize the' heirs;
nor will the Chancellor speculate upon the probability of
there being issue in order to estimate the value of such a
contingent interest with a view of relieving the life-tenant.
There must be a fixed and uniform rule on the subject."
This decision fully sustains the court below in its decree of
April 8, 1879, in its opinion that "Ulery Conrad intended the
the real estate conveyed to his daughters and their children
to be advancemnts out of his estate to each of them to the
extent of the value of such real estate to each conveyed." In
fact it does not go as far as the case of *Bowles* v. *Winchester
and others*, 13 Barb. 1. The land in that case was given to
the daughter and her children after her death with a provi-
sion in a certain contingency, that it should go to the heirs
of the father, yet the court regarded it as an advance to the
daughter to the extent of the *fee simple* value of the real es-
tate given, the court declining to make any deduction from
the *fee simple* value of the land as an advancement to the
daughter, because on a contingency it might at some time go
to neither her nor her children.

· The principles laid down in these English and Kentucky
cases acted upon in *Needles* v. *Needles*, 7 Ohio St. 432, and in
*Ditten's administrator* v. *Cluney's executors*, 22 Ohio St. 436,
and in *Wagner's Appeal—Duval's estate*, 8 Pa. St. 122, syl.
2, where it was said, that a deed to a daughter for life only re-
mainder to her children was an advancement to her. On
page 127, the court say: "Such a settlement to Mrs. Wag-
ner for life remainder to her children is regarded as an ad-
vancement under our ˙intestate laws, as it was in England
under the statute, Car. 22 & 23, ch. 10, sec 5."

The counsel for the appellants insists, that as the deeds
made by Ulery Conrad to his daughter, Timna Hammer,
and her children, Asenith Davis and her children, and to De-
lilah Davis and her children, were made in " consideratou of

the natural love and affection, which he had for his daughters severally and their children severally and of one dollar;" that this indicates clearly, that these gifts of land were in part made to the children of the several daughters because of his natural love and affection for them, and therefore to the extent of the interest of these children of these daughters in these lands it can not be regarded as an advancement to his daughters. But if these deeds had nothing in them to indicate, that they were made by way of advancement to the daughters severally, except the fact that they were made "in consideration of the natural love and affection of the father for his daughters and their children, and conveyed the land to the daughters and their children," they would have been regarded to the extent of the *fee simple* value of the land conveyed as advancements to the daughters. For the love and affection for the children of the daughter could be regarded by the court as love and affection for their children *as* the offspring of the daughters. This seems to me to be obviously the interpretation, which would always be given, when a deed conveys land jointly to a daughter and her children. But in the case before us, that this was the true meaning of Ulery Conrad, is most obvious on the face of the deeds; for he conveys the lands to these three daughters severally and to their children and declares on the face of the deed, that there shall be included among the beneficiaries the children of these daughters thereafter born. As a matter of course he could not possibly have an affection for these unborn children except *as* the offspring of his daughters. He could not have for unborn persons any personal love or affection. That his intent in making these deeds was simply by way of advancement to his daughters severally is obvious from the fact, that at the same time he made a deed to one of his daughters and her children including her after-born children, for his natural love and affection for her and her children, he made another like deed for a tract of land to another daughter, Delilah Hammer, and her children born and to be born, in which the consideration is recited to be "natural love and affection for the daughter" and not as in the other cases "natural love and affection for his daughter and her children." It is impossible to suppose that Ulery Conrad regard-

ed this last deed as an advancement to his daughter of the *fee simple* value of the entire tract conveyed but regarded the other three as advancements of only a small proportional part of the land conveyed.

The case of *Edwards* v. *Freeman*, 2 P. Wms. 435, and *Wayland* v. *Wayland*, 2 Atk. 635, show, that a deed to a daughter and her children or a deed for their use will be regarded as an advancement to the value in *fee simple* of all the land conveyed, whatever may be the form or conditions of the deed, provided it was intended as an advancement of the daughter, and this will be presumed, unless the lands conveyed were purchased. Even though they were thus settled at the time of the marriage of the daughter and might in a certain sense have been considered as conveyed for a valuable consideration, marriage being a valuable consideration, yet lands so settled in a marriage-settlement on a daughter and her children or any of them is considered as an advancement to the daughter to the full value of the *fee simple* in the land so settled. I am therefore, of opinion, that the conveyance to the four daughters of Ulery Conrad, and their children, by their father must be regarded as an advancement to the daughters of the *fee simple value* of the land so conveyed, and that the circuit court of Pendleton county did not err in its decree of April 3, 1879, in declaring that " Ulery Conrad intended the real estate conveyed to his daughters and their children to be advancements to each of them to the extent of the value of such real estate so conveyed to each daughter."

The next enquiry is : As of what date ought advancements whether real or personal estate to be valued ?" Unless under peculiar circumstances, as when perhaps the advancement is a remainder, (See *Chein et al.* v. *Murray et al.* ———) the rule is established in Virginia as well as elsewhere, that all advancements are to be accounted for as of the value they bore when received, and that during the life of the intestate, rents, issues and profits should be charged against the heir or devisee. (*Beckwith* v. *Buller*, 1 Wash. 224; *Hudson* v. *Hudson's Executor*, 3 Rand. 120 ; *Williams* v. *Stonestreet*, 3 Rand. 559; *Christian* v. *Coleman*, 3 Leigh. 30 ; *Knight* v. *Oliver*, 12 Grat. 33; *Puryear* v. *Cabell*, 24 Grat. 260.) The reasons for valuing advancements as of the time they were received and not as of

the time of the death of the intestate are several, first: Because from the time that the real or personal property is received as an advancement, it is the property of the party receiving it, and if it is lost in whole or in part by destruction or deterioration, it is the loss of the party by whom it is owned, and it is but fair, to compensate the party, to whom such property is advanced for this risk of loss, that, if the property is increased in value, he should have the benefit of the increase. (*Beckwith* v. *Buller*, 1 Wash. 225 ; *Kean* v. *Welsh et al.*, 1 Grat. 406 ; *Knight* v. *Yarborough*, 4 Rand. 569 ;) second : Interest during the lifetime of the intestate ought not to be charged ; for if charged it would defeat the main object of the statute requiring advancements to be brought into hotchpot, which is to produce equality among all the children of an intestate father. " Advancements are generally made to enable the child to engage with advantage at the proper age in the occupation by which he expects to make his living. If each child is advanced at the same age to the same amount, each is advanced equally, although one be advanced twenty years before the other, each having the same capital advanced for his establisment in life." (Judge Green's opinion in *Knight* v. *Yarborough*, 4 Grat. 569.)

The circuit court in this cause by its decree of January 19, 1882, properly directed, that "the advancements to each of the sons and daughters of Ulery Conrad deceased, either in money, or lands should be charged as of the value at the time the advancements were made." It only remains now to enquire whether in this decree the circuit court erred in adding, that each child was to be charged "with interest on the said value from the death of their father Ulery Conrad." It seems to me as quite obvious, that, if we would carry out the spirit of our law requiring advancements to be brought into hotchpot, interest must be charged on the value of all advancements whether in real or personal property from the death of the intestate. The spirit of the law is, that by this hotchpot equality shall be produced on the death of the intestate, it being very properly presumed, that, if a will had been made those, who stood in the same relation to the deceased, would at his death be made equal in the distribution and division of his estate both personal and real. To effect this at the

death of the intestate all the property, which he has given by way of advancement to any of his children, is regarded at his death as thrown into hotchpot and treated for the moment in dividing and distributing his estate among his children, as though it had remained in the possession of the intestate and had not been given away in his lifetime. If this division and distribution of the intestate's property happens for any reason not to be made at the death of the intestate, but is postponed or delayed for years, it would seem perfectly obvious, that this ought not to prejudice the right of any of the children or to be allowed to so operate, as to be of benefit to some children while an injury to others. The children, to whom advancements had been made, ought not to be benefited to the prejudice of those to whom no advancements had been made, by the fact, that by accident or necessity or by the conduct, it may be, of the children, to whom advancements had been made, the distribution and division of their intestate father had been delayed for many years. This can only be prevented by charging interest on the value of all advancements, whether they be in real or in personal property, from the death of the intestate father. In that way only can equality as of the date of the death of the father be produced; and this is the object and purpose of the law. There is no case in Virginia, which gives any countenance to the idea, that the children, to whom advancements may have been made, should hold possession of the real or personal property advanced to them for years after the death of their father and pay no interest on the value of their advancements, simply because for any reason the division and distribution of the estate of the father happens to have been delayed for years.

We have seen that interest on advancements is not to be charged from the time the advancements were made. If any interest is to be charged at all, there remains no other period, from which interest can be charged, except the death of the intestate. Though owing to the brevity of the opinion in certain Virginia cases it does not appear very distinctly, that this was the date fixed upon, and though for like reasons it is sometimes said in general language, that no interest should be charged on advancements, yet the true meaning in

such cases is, that interest should not be charged from the date of the time the advancement was made, that being the real point under consideration.    Take for instance the oldest case in the Virginia reports, the case of *Beckwith* v. *Butler*, 1 Wash. 225.    The court says : " The court is of opinion, that when a child is advanced with money or negroes, he need not bring into hotchpot the increase of the one or account for interest upon the other.    For as he must sustain the loss by accounting for the property, *when given*, and by supporting and raising the negroes, so he is entitled to the increase of them.    There does seem to be a hardship, where one has been advanced for many years, that he should account with an unadvanced child only for the principal.    Yet no better rule than the above can be adopted."    An examination of this case will show clearly, that the court by this meant: First, that the advanced child should be charged with the value of the property *when advanced* and not with the value of the property when the intestate died, nor when the estate was actually divided and distributed ; and second, that the advanced child should not be charged with the increase of the property, nor with interest on it from the time it was advanced.    But it did not mean, that the advanced child should not be charged with any interest at all, when the distribution and division of the property took place years after the death of the intestate, as it usually does.    For in that very case the advanced children were charged with interest on the value of the advanced property from September 1, 1781, and yet the final division and distribution of the property of the intestate did not actually take place till 1793, some twelve years after the interest was charged on the value of the property advanced.    (See 1 Wash. foot of page 224, and page 226.)    While it does not from this imperfect report appear why interest was charged from September 1, 1881, on the advancement, yet I have no doubt, that it was because the intestate died at that date.    I can conceive of no other reason for this being fixed as the date from which interest was to be charged to all children, to whom advancements had been made.    So understanding this decision, I find it fully sustained by all the subsequent Virginia cases, in which the question as to time from which interest was to be charged was involved.

Thus it appears in the case of *Knight* v. *Yarborough*, 4 Rand. 568, 571, when the decision was based upon the assumption, that where property is advanced and is required to brought into hotchpot, the party, to whom it is advanced, should be charged with the value of the property, when it was advanced, and with interest on it from the death of the intestate. In this instance the property advanced was personal property. In *Knight and wife* v. *Oliver et als*, 12 Grat. 33, interest was charged on advancements of personal property from the death of the intestate. In the case of *Purger et als* v. *Cabell et als*, 24 Grat. 260, as explained by the same case on a second appeal (27 Grat. 902), I understand the same principle was applied, that is, the charging of interest on advancements of property from the death of the intestate. In that case the advancements were not real estate, and some of the advancements were made by the father in his lifetime, and by his will he authorized his widow, to whom he gave a life-estate, to make other advancements to his children, and he directed, that at her death his estate including these advancements should be equally divided among his children. It was held, that interest should be charged on these advancements from the death of the widow, till the time of the division, six years afterwards. In that case the time, when all the children were to be made equal, was the death of the widow by the express provisions of the father's will. When there is no will of the father, then the time, at which all of the children are to be made equal, is the death of the testator, as is fairly to be deduced from the decision of *Knight* v. *Oliver et als*, 12 Grat. 33. There is no where any intimation, that there is any difference as to the time, when interest should be charged against a party, whether the advancement be of personal or real property; and there is no ground for any distinction being drawn, for on the death of the intestate the interest of the distributees is as fixed and determined on the death of the intestate as that of the heir. The equality sought by the law requiring real and personal property advanced to a child to be brought into hotchpot is equality at the death of the intestate; and therefore in both cases interest is charged on the value of the property at the time it was advanced, the interest to be from the death of the intestate. The fact, that for the con-

venience of the personal representative he can not be com-
pelled to make distribution in less than a year after the death
of their intestate, has, it seems to me, nothing to do with the
time, from which advancements of personal property are to
bear interest.    They like real estate bear interest from the
date that the law intends equality among the children to be
established, that is, from the death of the intestate.    I have
seen no authorities, which draw a distinction in this respect
between real and personal property advanced; and I consider
that there is no difference.

The case relied upon by the appellants' counsel as not in
accord with the views which I have expressed, is *Barrett &*
*wife* v. *Morris's executors et al.* 33 Grat. 273.    In that case the
father did not die intestate but left a will, in which he sets out
the advancements he had made to each of his four children:
to one $31,000.00; to the second, $32,891.00; to the third,
$34,000.00, and to the fourth, $35,112.00.    The will directed,
that no sale of his real estate should be made during the life
of his widow, who was to receive an annuity of $2,000.00 a
year out of the rents, profits and income of his estate.    He
further directed, that after his debts, devises and bequests
should have been paid and satisfied, the remainder of his
estate should be divided into four shares, so that the first
share together with the $31,000.00 advanced to the first child,
the second share together with $32,891.00 advanced to the
second child, the third share together with $34,000.00 ad-
vanced to the third child, and the fourth share together with
$35,121.00 advanced to the fourth child should be equal, giv-
ing the first of these shares to the first child, the second share
to the second child, the third share to the third child, and the
fourth share to the fourth child.    The testator died in 1867.
The widow died in 1872.    During her lifetime a suit was in-
stituted by one Davis against the executors of Morris for a
large and unascertained debt, and the amount of this debt
was not ascertained till December 11, 1875, so that it was im-
possible to make a division of the estate among the children
until that time.    The court held in that case, that the proper
time to charge the children, to whom advancements had been
made, with interest on their advancements was December 11,
1875, because, as they very properly construed the will of

Morris, his children were to be made equal by bringing into hotchpot the principal of the sums, which he had severally advanced them, all set out in his will, after all his debts were paid and after the death of his widow. The time fixed for this equality by his will was not at the time of his death nor even at the time of the death of his widow, but only after all his debts were paid, and his estate was ready for distribution and division among his four children. The court, it seems to me, properly held in that case, that the testator had designedly postponed the time, when all his children should be made equal by bringing into hotchpot the principal of the advancements, which he had made to them severally. This decision, it seems to me, was perfectly consistent with the principles I have stated. For it can not be disputed, that the testator has a right by his will to select a different time from that fixed by the law, when all his children shall be made equal by bringing their several advancements into hotchpot; and his wishes as expressed in his will on this subject will be carried out. No one can read the opinion of the court in that case and fail to see, that the sole ground, on which the court decided, that interest was not to be charged on the several advancements to the children for some eight years after the testator's death, was that it appeared from the testator's will, that he desired this to be done. It is true, Judge Staples in delivering the opinion of the court does after putting the decision of the court as to the time, from which interest was to be charged on the advancements to the children, expressly on the ground that the testator had clearly shown, that his children were not to be made equal at the time of his death by accounting for the principal of their several advancements, but only to be made equal in this manner many years after his death, that is, after the death of his widow and the payment of all his debts, and when his estate was ready for distribution actually among all his children, then adds language, which is calculated to mislead as to the true principles governing in such cases. He says, page 276: "And this is precisely what the law prescribes in cases of advancement in the absence of any contrary provision by the testator." This we have seen is true only when this intention, that the children shall be made equal by bringing their advancements into hotchpot, when the estate

is in point of fact ready for division and distribution, appears from the will. If the father dies intestate, or if the contrary does not appear in his will, the law presumes that his will is that all shall be made equal at the time of his death by bringing their advancements into hotchpot. (See especially *Knight & wife* v. *Oliver et als.*, 12 Grat. 33, syl. 4.)

My conclusion therefore is, that the circuit court did not err in its decree of April 8, 1879, in directing that "the daughters of Ulery Conrad (who had been advanced) should not be charged with rents and profits prior to the death of their father upon the real estate conveyed to them severally and to their children." Nor did the court err in this decree in directing these daughters to be "charged with the value of these lands, when the deeds were made, with interest from the death of their father." Nor did the commissioner in his last report confirmed by the decree of the court made June 15, 1883, err in charging all the children of Ulery Conrad with the value of personal as well as real estate advanced by their father at the time it was advanced and with interest on such value from Nov. 11, 1867, the time when Ulery Conrad died.

It is complained of by appellant's counsel as very unjust, that the son Laban B. Conrad, who has had possession of all the father's land since his death in 1867, is only charged the rents and profits of these lands, which do not exceed three per cent. on their market value, while the daughters, to whom advancements had been made, are charged from the time of their father's death six per cent on the value of the lands deeded to them. I confess, that I am unable to see any injustice, which is done these daughters to whom advancements have been so made. On the contrary they seem to me to have great advantage over the son and daughter to whom no advancements were made. They are by the decrees of the circuit court and by law allowed to hold the tracts of land conveyed to them for more than twenty-two years from the date of the conveyances to their father's death free from all charges for rents and profits. And after the expiration of this period of more than twenty-two years they are not charged with the value of these tracts of land but only with their value in January, 1855, the time of the conveyances, probably not much if any more than one half the

present value of these lands, the lands in many parts of this country doubling in value in thirty years. It is this rapid increase in the value of lands which makes these annual rental value in many cases only about three *per cent.* on their selling price. It is very likely that these daughters in being required to pay six *per cent. per annum* on the value of these lands deeded to them, as this value was in 1855, are not really required to pay more than three *per cent. per annum* upon their present value or only about what the rents of these lands would now be; so that their brother in being charged with the rents of the lands which he has had possession of since his father's death, is really being charged with as much in proportion to the lands which he holds, as are these sisters to whom advancements have been made, the difference between them being only that they have had the use of the lands, which they held for twenty-two years free of rent, while he will be compelled to pay rent on all the lands of his father, which he holds, for all the time he holds it. Certain it is he can only be charged with the rents and profits of these lands, which with the tacit consent of his sisters his coparceners he holds; and equally certain it is that the law allows them the advantage over him of not paying any rents on the lands, which they have held for twenty-two years, while their father lived.

It is insisted by the appellants' counsel, that the twenty-four children of these daughters, who are still living, and to whom advancements have been made, ought all to be made defendants. I can not see that they have any interest whatever in this suit except the interest, which every child may have in the success of its parents in a litigation. They have no more interest in this cause than have the children of their brother Laban B. Conrad or their sister Mrs. Kyle, the plaintiff.

I have now considered all the objections urged by the appellants' counsel to the decree and proceedings in the circuit court; and my conclusion is, that there is no error in these proceedings; that the decrees of April 8, 1879, and of June 15, 1883, must be affirmed; and that the appellants must pay to the appellees their costs in this Court expended and $30.00 damages.

AFFIRMED.